JUDGE COFER
delivered the opinion oe the court.
George N. Smith, a husband and father, was the owner of two lots and improvements thereon, situated in Danville, each of the value of twelve or thirteen hundred dollars, and besides these he appears to have had but little estate of any kind. It seems that prior to 1862 Smith had become involved in an improper intimacy with a Mrs. Taylor, who with her husband resided in Danville. In March, 1864, Smith and his wife conveyed one of the lots to Manwarring for the recited consideration of twelve hundred dollars, and on the second day thereafter Manwarring conveyed the same lot to Mrs. Taylor for the same alleged consideration. At the time the latter deed was made Smith and Mrs. Taylor were present, and Manwarring swears that Smith had previously sold the lot to Mrs. Taylor for twelve hundred dollars, and that she showed him three of the four notes given for the price, and *521 both she and Smith said she had paid them off, and that Smith had the fourth note in his possession with a credit on it for about one hundred and fifty dollars.
Mrs. Smith was unwilling to join in a conveyance to Mrs. Taylor, and the conveyance to Manwarring was a fraudulent device to procure the release of her potential right of dower.
In November, 1865, Smith, for the recited consideration of thirteen hundred dollars, conveyed the remaining lot directly to Mrs. Taylor.
Both Smith and Mrs. Taylor having died, this suit was brought by the heirs at law of the former against the surviving husband and heirs at law of the latter to set aside the deeds from Smith to Manwarring and Mrs. Taylor and from Manwarring to her, and to be placed in possession of the two lots.
The plaintiffs, now appellants, sought relief upon three grounds:
First—That, although said deeds recite that the consideration named therein was paid, in truth nothing ^whatever was paid for either lot, and that the only consideration therefor was the illicit commerce and adulterous intercourse then and afterward existing between said Smith and Mrs. Taylor.
Second—That by reason of the adulterous intercourse between Smith and Mrs. Taylor, and long-continued excesses in dissipation, the affections of Smith became alienated from his wife and children so much that he labored under an insane delusion with respect to them; and that from the weakening of his intellect, the estrangement from his own family, and his criminal attachment for Mrs. Taylor, she and her husband acquired an unbounded influence over him, and by the undue exertion of such influence induced the execution of the deeds.
Third—That the deeds were made alone in 'consideration of illicit intercourse between the parties; and that as such intercourse was both prior and subsequent to the deeds, *522 they should, be set, aside on account of the viciousness of the consideration.
The answer put in issue the material allegations of the petition, and the circuit court on final hearing adjudged the deed dated in November, 1865, to be canceled, and dismissed the petition as to the deed of March, 1864. Not satisfied with that judgment, the plaintiffs below have appealed, and the children of Mrs. Taylor'prosecute a cross-appeal.
1. The evidence seems to have satisfied the circuit court that the deed of March, 1864, was made upon a valid consideration, and we concur in that conclusion.
2. As to the deed of November, 1865, there is no evidence of payment except the recital in the deed, and the evidence strongly conduces to prove that -neither Mrs. Taylor nor her husband had means with which to pay for that lot; and if the correctness of the decision of the circuit court depended alone on this question, we should be disposed to affirm the judgment.
3. The evidence shows that during several years prior to the date of the deed of 1865 Smith was very frequently drunk, and strongly tends to prove an adulterous intercourse between him and Mrs. Taylor; but it does not warrant the conclusion that he was mentally incapable of making a valid contract or that he had an insane aversion to his own family. Nor is there any evidence of the existence of an undue influence over him by Mrs. Taylor, except the inference to be drawn from the meretricious connection between them, which is not alone sufficient to warrant us in finding as a'fact that such influence did exist; and if such influence did in fact exist, there is no evidence of its exercise except the execution of the deed without, so far as appears, any legal consideration therefor.
It is insisted, however, by counsel for the appellants that if it be assumed, as we have intimated may be done on the evidence in the record, that no legal consideration was paid *523 for the lot conveyed by this deed; that Smith was so infatuated with Mrs. Taylor as to abandon his own family for her, as the evidence shows he did, and convey to her all or nearly all the property he owned, thereby beggaring his own family; and in addition to this, that he was a constant drinker and very frequently drunk about the date of the deed and before, it ought to be presumed that the deed was procured by the fraud and undue influence of Mrs. Taylor over her unfortunate victim.
It is assumed, on the authority of section 190, Story’s Equity Jurisprudence, that “courts of equity will grant relief upon the ground of fraud established by presumptive evidence, which evidence courts of law would not always deem sufficient proof to justify a verdict at law.”
This language was used by Mr. Story in discussing the remark of Lord Hardwick, that “fraud may be presumed from the circumstances and condition.of the parties contracting ; and this goes further than the rule of law which is that fraud must be proved, not presumed.”
We can not subscribe to the doctrine attempted to be deduced from the foregoing quotation, to the effect that the chancellor may find fraud as a fact on less evidence or on evidence different from what would be required to authorize a jury to find the same fact. That which will satisfy the mind of one man may not satisfy the mind of another; but the true rule in all courts, without regard to their character, must be to require such legal evidence as will overcome in the mind of the tribunal the legal presumption of innocence and beget a belief of the truth of the allegation of fraud. Any other rule would be calculated to create invidious distinctions between the different courts of the country, and would make the rights of parties depending upon questions of fraud or no fraud to turn upon the accident which brought them into the particular forum, and not upon uniform and known rules of law. Almost every alleged fraud in the innumerable transactions of men *524 may in some way be made cognizable in. a court of equity; and as the party charging the fraud selects his own forum in all cases of concurrent jurisdiction, nearly all questions of fraud would soon come into courts of equity for decision. Under such a rule it would become the interest of the party charged with fraud to seek, and of the party charging it to avoid, issues out of chancery to be tried by juries to the embarrassment of the courts and the prejudice of the due administration of justice.
The chancellor, like a jury, must have such evidence as satisfies the mind to a reasonable degree that fraud has been committed before he is justified in finding its existence.
There are circumstances in this case calculated to create in the mind grave suspicions that fraud and undue influence have been practiced, but there is not enough to create a satisfactory conviction of the-fact.
4. The third ground relied upon for relief is that the only consideration for the- deeds was the illicit intercourse between the grantor and the grantee.
It has been, suggested already that there was a valid consideration for the deed of 1864; but as to the deed of 1865 there is no evidence of any lawful consideration except the recital in the deed, and this is overcome by the evidence offered by the appellants to rebut it.
As to the latter deed we are therefore brought face to face with the fact that it was executed in consideration of an adulterous intercourse between the parties, and are asked by the appellants to affirm a judgment ordering it to be canceled on that ground.'
In entering upon the consideration of that question we are at once encountered by the maxim, “In pari delicto potior ed conditio defendentis, ei possidentisThe contract, if based on the alleged adulterous intercourse between Smith and Mrs. Taylor, is nevertheless completely executed, and her children are in possession and need not ask the aid of the court; and *525 the general rule is, as expressed in the maxim just quoted, that where both parties are equally guilty the court will leave them exactly where it found them.
It is insisted, however, that there is a class of cases where transactions or agreements in contravention of' public policy will be relieved against in equity for the reason that the public interest requires it to be done, and the court will serve the public through the individual, although he be a party to the wrong; but it is believed that in the cases where this has been done the decisions were either based upon statutes or have been subsequently disregarded as unsound.
The law, both in this country and in England, now undoubtedly is, in general, where parties are equally concerned in illegal agreements or transactions, whether such agreements or transactions be mala prohibita or mala in se, courts of equity, like courts of law, will not interpose .to grant relief to either. (Story’s Equity, sec. 298; Brookover v. Hurst, 1 Met. 668; Inhabitants of Worcester v. Eaton, 11 Mass. 377; Browning v. Morris, Cowper, 792; Bibb v. Bibb, 17 B. Mon. 307.)
We are therefore constrained to hold that an executed contract based upon illicit sexual ^commerce can not be set aside at the instance of the grantor or his heirs at law, who can not occupy in court a better position than their ancestor through whom they claim.
We have been referred to several cases supposed to sanction a different rule, but we do not so understand them; and if they do, they are opposed by a list of authorities so pointed and overwhelming that we feel compelled to decide in accordance with the authorities holding the views we have before expressed.
Wherefore the judgment is affirmed on the original and reversed on the cross-appeal, and the cause is remanded with directions to dismiss the petition.