WM. S. LUDLOW ET AL. *v.* E. X. MAXWELL ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—55.]

**Confidence Reposed as Ground for Granting Relief.**

> Where a sister reposes great confidence in a brother who has been managing her estate and seeks to have the estate partitioned and her portion set off to her and to that end institutes a proceeding to partition and two persons are selected to divide the property and they act honestly in the matter but are dominated and practically selected by the brother on account of the confidence the sister has in him, and these commissioners divide the estate following the desires and advice of the brother in doing so, even if no fraud is practiced either by him or the commissioners the award will be set aside and a new trial and partition granted if the award made is unfair as to values and the sister receives materially less values than the brother and other shareholders.

### APPEAL FROM KENTON CHANCERY COURT.

June 22, 1882.

OPINION BY JUDGE PRYOR:

The ancestor of the appellants and the appellee at the time of his death was the owner of a large landed estate bordering on the Ohio River in this state, and lying opposite the city of Cincinnati. He devised his estate to his wife for life and at her death to his children, three in number, the appellee, Mrs. Maxwell, and the appellants, William and Albert Ludlow. A part of the real estate constitutes or lies within the city of Ludlow and the balance is farming land adjoining. During the life of their mother, the life tenant, this large and valuable property was managed and controlled principally by the appellant, William Ludlow, who continued the same supervision over it after her death. His sister, the appellee, was not living in Kentucky at the time her mother died, and the rents of this realty or her portion of it was collected by William and paid over to her at stated periods. The entire family and each and every member of it reposed the greatest confidence in William, trusting and submitting the entire control of the estate to his own judgment and discretion. The children held the estate in common for some time after the mother's death, and until the appellee, Mrs. Maxwell, became desirous of having a division of the estate.

The proposition for a division was not acceded to by William and his objections were based mainly on the ground that the gradual and constant growth of the two cities adjacent to Ludlow would doubtless in a few years increase greatly the value of the property and it had better remain in common awaiting future developments as to value. The railroad known as the Cincinnati Southern Railway was then in process of construction, or had been located through a part of this landed estate and it is manifest that the views of the appellant William in reference to the division should have prevailed. Counsel, however, were advised with by Mrs. Maxwell, and finally the parties agreed that a division should be made by and under the supervision of General Kerner Garrard, who was related to the parties, and the Hon. James O'Hara, of Covington. Both of these gentlemen were familiar with the property and its surroundings and undertook to make the partition. This partition was made and the parties accepted it, and executed conveyances in accordance with it. In the partition the interests of the two brothers, William and Albert, were by consent thrown together, and that of Mrs. Maxwell, consisting of various parcels, conveyed to her.

After the partition was made and the conveyances placed on record the appellees, becoming dissatisfied with the partition, filed this petition in equity asking that the partition be set aside and the deeds cancelled and a redivision of the property made. The main ground for this relief is alleged to consist in the fraud practiced by William in obtaining certain parcels of the land allotted to him and his brother, by concealing from the commissioners the relative value of the parcels allotted to each, and in the fact that the value of the property, actual and rental, was known to William who had been managing it for years and unknown to the appellee and the commissioners, and that in the division the appellee failed to have allotted to her an equal part of the estate. It is further alleged and maintained in argument that William having controlled and managed the property for years, and having the confidence of the appellee and the commissioners, was permitted to make the division and when made it was assented to by the two commissioners who were not acquainted with the values but acted upon William's representations.

There has been a vast amount of testimony taken by the parties, including maps of the property and its surroundings, and

much of it tends more to confuse than enlighten the chancellor as to the equity of the partition made. The chancellor seemed to think the division unjust, and by his judgment cancelled the deeds.

We have examined the record with much care, and have been unable to find any evidence of fraud on the part of the appellant William Ludlow. The agreement to divide the estate was voluntary and the commissioners selected by the parties were not only intelligent men but had been acquainted with the property and the adjacent territory for many years. Mrs. Maxwell had been raised on the estate and must have had some knowledge of the value of the property allotted to her in this division.

The growth of the cities adjacent to this property, and the construction of the Southern Railway was then being discussed and the road located, and all these matters must have been taken into consideration by the parties, and were, in fact, the causes assigned by William for opposing a partition of the estate at the particular time. So we think under the circumstances, and without any evidence of bad faith on the part of William, the chancellor ought not to have cancelled the deeds of partition, requiring an account of rents and a redivision of the entire estate. Leases have been made by the parties of some of their lots, and improvements made on others, and while the testimony of the husband of Mrs. Maxwell may to some extent conduce to show fraud on the part of William, the decided preponderance of the testimony refutes such a conclusion, and in this view of the case we are sustained by the statement of the commissioners and the surveyor who were selected by these parties to make the division. The homestead was allotted to the appellee at her own instance and consented to by William, and perceiving no reason for disregarding the entire division, we will proceed to discuss the manner of division and to ascertain if there was such an inequality between any of the parcels assigned to the appellee and those assigned to the appellants as would require the chancellor to interfere and compel the parties to account in some manner for the difference. There was a classification of the property divided, and one parcel allotted to the appellee as an equivalent for a particular parcel allotted to the appellants. There was no specific or defined value on any parcel, but the commissioners proceeded to allot one parcel as the equiva-

lent for another designating the particular parcels allotted. Some of the parcels consisted of pasture lands, others of city lots, etc., and such allotments ought not to be disturbed when equal, or approximately equal in the division. There is much said by counsel in the argument of the case as to the value of certain gravel beds, when the proof shows that over one-third of the territory there is fine gravel or sand beds, a fact that must have been known to the commissioners and ought to have been known to the appellees; and to disregard the entire division for such causes in the absence of fraud, or some act equivalent to fraud by the party charged, is not denounced by any rule of law or equity. We have analyzed the testimony with a view of ascertaining whether there were fraudulent representations made or suppressed even by William with reference to the division, and while such charges are distinctly averred in the petition and argued in the brief of counsel we have been unable to reach such a conclusion from any fact appearing in the case.

If there is any reason for the chancellor disturbing the division in any particular it can be based alone on the relation he bore to the sister and the property, and the confidence reposed in him by her as well as the commissioners. The division although assented to by the commissioners selected by the parties was in fact made by the appellant. He was not only the brother of the appellee, Mrs. Maxwell, but had been her confidential adviser and managed the entire estate at his discretion prior to this division. All his acts were approved by her, not only by reason of the perfect confidence she had in him, but because he had conducted the business affairs connected with the estate, so far as this record shows, so as to give to each of the children their just proportion of the rents and profits. The same confidence seems to have been placed in him by the two commissioners in making the division and his views were, generally, adopted by them. The question then arises, will the appellants be allowed an advantage over their sister in the division of the estate when William occupied the relation of trust and confidence that this record shows he did towards both the sister and the commissioners selected to make the division.

It may be and the rule doubtless is that circumstances creating in the mind only a suspicion of fraud are not sufficient to authorize

"a satisfactory conviction of fraud." *Marksbury v. Taylor,* 10 Bush (Ky.) 519. A trustee is in such a position of trust and confidence, says Perry, that his contract or bargain with the cestui que trust will be either held void or he will be a constructive trustee. 1 Perry on Trusts (4th ed.) 244, § 195. While the appellant in this case may not in a legal sense be deemed a trustee, the same author says that equity goes further. It not only watches over the defined relation of the parties, but it scrutinizes the undefined relations of friendly habits of intercourse, personal reliance, and confidential advice. I Perry on Trusts (4th ed.) 243, § 194.

No higher degree of confidence could have been reposed in another than the appellee seems to have had in the appellant with reference to all business transactions; and when the commissioners were inspired with a confidence almost equal to that of the sister, will or ought the chancellor to know anything more than that inequality existed in the division at the time it was made and accepted by the parties? Although Mrs. Maxwell accepted the deed it can not be said that the parties were contracting at arms length when she accepted the conveyance as a full and final division of the property. An error of judgment, or a mistake of facts made by the appellant in the division (although assented to by the commissioners) when looking to the relation existing between these parties at the time, and resulting in inequality ought to be corrected. A mere inequality resulting in but little loss to the parties would not be sufficient upon the facts of this case to authorize the interference of the chancellor. It is not to be expected in the division and subdivision of such a large estate into lots, that exact equality could be arrived at, but where a loss is substantial it seems to us a court of equity ought to remedy the wrong. Mrs. Maxwell and her husband were present when the division was made and although they may have had ample opportunity to have inspected the property after the division, or to seek the advice of others, there was the relation of brothers and sister, and a confidence in business transactions in reference to this estate by the sister in the brother for many years, that must have created such an influence as would have removed not only any suspicion of inequality, but left her to suppose that exact and equal justice had been done all parties in the division. Fraud, in our opinion, is not shown, but an inequality appears with refer-

ence to some of the classifications made in the division that prompts an inquiry by the chancellor and authorizes some relief to the appellee. The only grounds of complaint on which any relief can be obtained so far as the record now appears is that part of the division known as the river front and the ferry property. It is plain from the statement made by one of the commissioners and from the proof in this case that the allotment with reference to the river shore is unequal considered with reference to the entire division or as classified by the commissioners. The deep water suitable for landing and mooring boats and for boat harbors has all or nearly all been allotted to the appellants, and in making the division the commissioners and the appellant William seem to have made no difference in value because of the deep and low water. The one is valuable and the other not and, therefore, an equal proportion of the deep and shallow water should be allotted each as near as is practicable, locating the same as near as possible to the lots owned by each that front the river, or that lie adjacent to the river road separating them from the river. There is deep water in front of the residence allotted to Mrs. Maxwell and there is no reason why some portion of this should not be allotted to her. This may not be practicable when examined by the commissioners and for that reason they should be left to examine this river front and give to each so far as is practicable their equal proportion in value of the river front. The mooring of boats and harbors by reason of this deep water makes such front of great value, and this was overlooked by the appellant and the commissioners.

In the allotment as class No. 1, the appellee obtained the distillery property as defined by the report or deed and the Arnold House. William and Albert in lieu of this obtained certain lots on Second street, east of the distillery, including all east of distillery, ferry franchise, landings, etc., that is, the ferry rights and property pertaining to it. Now it is evident that this ferry property or that part of the territory belonging to it, on the Cincinnati side, was not estimated or valued as it should have been, and this view is sustained by the testimony of O'Hara and by other witnesses in the case. While the value placed on the ferry property by some may be speculative, still in reading the record it is plain, we think, that the valuation as compared with that allotted Mrs.

Maxwell in lieu of it renders that part of the division unequal. The case should, therefore, go to the commissioners with instructions to ascertain and report the difference in value of class or lot No. 1, if any, at the time the division was made, and the facts upon which they base their opinion and whatever difference there may be the appellants must pay to the appellee in money, or have allotted and conveyed to her certain parcels of the land already allotted them to make up the difference, and this must be done under the supervision of the chancellor through his commissioner unless the parties can agree. It does appear that the annual income from that part of the estate designated as No. 1 is about equal to each child but we are inclined to adjudge that the parcels embraced in lot No. 1, assigned to appellants, give to each an undue proportion, so far as value is concerned, over Mrs. Maxwell. The case should, therefore, go to the commissioners already appointed by the court, or such as the court may designate, with directions to so allot the river shore as to give to each a fair and equal proportion in value of the entire river front and to report the difference in value of the allotments made and designated as lot No. 1, in exhibit "U."

We find no other error that we think authorized the chancellor to interfere further. The appellant William, the commissioners, and the surveyor, all sustain the division as equitable except in the parcels already indicated, and when the parcels have been assigned, barns made, as well as improvements on particular lots, the chancellor would hesitate to rescind where actual fraud had been practiced, if he could otherwise reach an equitable adjustment; and in a case like this where there is no fraud or actual concealment of facts, the parties should be made equal without disturbing the division if it can be avoided, and particularly when the party complaining is asserting an equity opposed to the action of those she has selected to protect her interests. The judgment is *reversed* and cause remanded with directions to refer the case to the commissioners as herein indicated, and to set aside so much of the judgment as cancels the deeds of partition and for further proceedings consistent with this opinion. Each party should pay one-third of all the costs of this litigation both in this court and the court below.

It is urged by counsel for the appellants that as to the appel-

lant William, the division can not be disturbed as he took no part in the partition. We think different. This common estate was left to be divided by the brother, and was in fact divided by him and relief should be given to all entitled to it against those who have received undue portions of the estate.

Mrs. Maxwell is entitled to her proportion of the rents of the ferry property and the river front to the extent the division is unequal.

*T. F. Hallam, John G. Carlisle, Wm. Lindsay, for appellants.*
*J. F. & C. H. Fisk, for appellees.*