## The S. Rose Co. v. Hasenzahl.

(Decided January 20, 1911.)

Appeal from Campbell Circuit Court.

Fraud or Deceit—Evidence—Sufficiency.—Fraud cannot be sustained by mere suspicion, strained inference or conjecture. The rule is that in every case there must be such legal evidence as is sufficient to overcome in the mind of the legal presumption of innocense, and beget a belief of the truth of the allegation of fraud.

HORACE W. ROOT for appellant.

MATT HEROLD for appellee

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, The S. Rose Company, a corporation, is engaged in the State of New York in the business of importing, buying and selling rough diamonds, carbon and bort, etc., for use for mechanical and scientific purposes. On March 7, 1908, it sold and delivered to appellee, William Hasenzahl, to be paid for in thirty days from said date, six stones of drill bort, weighing 7 7-32 carats, at $6.00 per carat, and five stones of carbon, weighing 5 1-2 carats, at $40.00 per carat, making a total of $263.31. Appellee declined to pay for the stones so purchased, and appellant brought this action to recover the purchase price. Appellee confessed judgment in the sum of $43.31, the agreed price of the six stones of drill bort, but entered a defense as to the balance of the account. A trial by jury resulted in a verdict for appellee. From the judgment based thereon, this appeal is prosecuted.

It appears from the record that the goods purchased by appellee were not only sold and delivered to him with-

out any warranty or guaranty on the part of appellant, but upon the following express terms and conditions of non-guaranty, to-wit:

"IMPORTANT NOTICE. Carbon and all other diamonds being a natural formation, their temper being beyond human knowledge, it CAN NOT BE GUARANTEED. Our years of experience and facilities enable us to get the best quality the market affords. By returning them IMMEDIATELY all the goods will be exchanged, PROVIDED they have not been SET, TRIED OR BROKEN."

Appellee does not contend that he was not aware of the above notice when the goods were delivered; on the contrary, he admits that the goods were sold under the terms above set out. To the petition, which is in the usual form for goods sold and delivered at appellee's instance and request, appellee filed an answer containing three paragraphs. In the first paragraph he denied that appellee had sold and delivered to him any merchandise, at any time, of the value of $263.31, or of any value in excess of $43.31. For the purpose of overcoming the effect of the terms and conditions of non-guaranty upon which the goods were sold, he pleaded in the second paragraph that, unknown to him, appellant had doctored or manipulated the carbon by coating the same with paraffine or some other substance unknown to appellee, thereby concealing the true nature thereof and making it impossible for appellee to detect the defects or true nature thereof; that said carbon were defective and of poor quality; all of which was known to appellant, but that by reason of said coating it was impossible for appellee to detect the true nature and character of the same until the carbons were tried or used; that at the time he accepted the carbons he did not know that the same had been coated, but believed that they were in their natural state or formation, and had he known that the carbons had been coated or manipulated he would not have accepted the same. The third paragraph presented a counter-claim, which it is unnecessary to set forth, as the lower court sustained a demurrer thereto.

As appellant did not ask for a peremptory instruction, we refrain from passing upon the question whether or not there was any evidence justifying the submission of the case to the jury. It is, however, contended that the verdict of the jury is flagrantly against the evidence, and we shall now proceed to a consideration of that question.

Appellee testified that appellant sent him a collection of carbons from which to make a selection. Of the number he retained five. He ordinarily inspected the carbons under a magnifying glass. He did not find anything objectionable; they looked good. It is possible to hide a defect in a carbon. The carbons were bought for the purpose of drilling. They were used in drilling a hole upon which progress had been made to the extent of 156 feet with white diamonds. When the carbons were used for this purpose they drilled only 12 feet, when they were crushed up. This showed that they were defective. They ought to have drilled in the formation where they were used, at least, 2,000 or 3,000 feet. The result showed that the carbons were not natural stones, and that they had been doctored. It is possible to take a fresh broken diamond that is inferior and deceive a man with it by rubbing it with oil or other substance. The porous parts of the outside will absorb it and give the carbon a gloss just the same as the natural diamond would have. No one could tell whether or not the diamond had been so manipulated without testing it with chemicals or trying it or breaking it. On cross-examination, in answer to the question, "Can you state to this jury, under oath, that those diamonds were doctored in any way," appellee answered, "well, I got no way to make a test." When he examined them they seemed like natural stones. Because they didn't act right in the bit, he concluded they had been doctored. He was not able to state to the jury how the diamonds were doctored, but could tell them how they could be doctored. In examining the diamonds he did not discover anything on them at all. His only reason for concluding that the stones had been doctored was that they were defective and he didn't discover the defect. He knew of the notice of non-guaranty accompanying the carbons. When the account was sent out for collection he did not in his letter claim that the carbons had been doctored; he merely stated that they were defective. He didn't come to the conclusion that they had been manipulated until his son reported that they were defective.

Ferdinand Hasenzahl, appellee's son, testified that he had been employed for ten years by his father in the diamond drill business. Remembered receiving the five carbons and six borts which his father had sent him in March, 1908. After drilling about 12 feet with the carbons they broke like glass. Looked at the carbons before using them. They appeared to be natural stones and he

couldn't tell whether they were good or not until they were tried or broken. Whether they were colored or doctored he could not say, because he had no way of testing them until he set them in the bit. The carbons must have been tampered with; otherwise he would not have been deceived. There is no way of telling whether or not a diamond has been tampered with except by breaking or trying. On cross-examination he stated that he didn't know whether a diamond could be tested with chemicals or not. He couldn't prove that the stones were covered with any foreign substance, and could not, of his own knowledge, say whether they were or not. The reason that the diamonds were crushed was that they were of inferior quality. He thought the diamonds had been manipulated in some way; otherwise he would not have been deceived. When he bought diamonds from others the agents would permt him to chip off the diamonds he was doubtful about. This was the only way he knew of to distinguish a good stone from a bad stone. He did not chip off the carbons in controversy, because he was afraid that if they were bad, appellant would not take them back. He had no right, however, to chip off the stones in question. If he had been buying these stones, he would have chipped them if he had the right to do so.

For appellant, Joseph S. Rose, the president and treasurer of the company, testified that his company was located in New York City. He sold the stones, for which suit was brought, to appellee. Appellee was to pay for them within thirty days. Appellee never made any complaint about the character of the stones until the claim was turned over to an attorney for collection. Neither appellee nor any member of his firm ever did anything to the stones to manipulate them or in any way change them or any of them, from their natural state. The stones were in the best of condition and there was absolutely nothing the matter with them. They were in exactly the same condition as when received from the Diamond Drill Carbon Company, from whom they were purchased. The stones were not coated with paraffine or any other substance.

Adolph Hirsch, president of the Diamond Drill Carbon Company, testified that he knew Joseph S. Rose. He delivered to Rose, in February 1908, sixteen stones of carbon. The carbons were of good quality, and were not in any way covered with foreign substance or doctored or manipulated in any manner.

In view of the fact that the majority of mankind deal honestly with each other, fraud is never presumed, but must be affirmatively proved. Fraud cannot be sustained by mere suspicion, strained inference, or conjecture. Evidence which produces a vague misgiving is not enough. The rule is that in every case there must be such legal evidence as is sufficient to overcome in the mind the legal presumption of innocence, and beget a belief of the truth of the allegation of fraud. (Marksbury, et al. v. Taylor, et al., 73 Ky., 523. Further the jury must have such evidence as satisfies the mind to a reasonable degree that fraud has been committed before it is justified in finding its existence. Of course, it is not absolutely necessary to prove fraud by direct and positive testimony. Fraud may be inferred from the proof of facts and circumstances usually or universally attendant on the commission of fraud. Where, however, it is sought to prove fraud by circumstantial evidence, the fraud must be such as would reasonably and naturally follow from the circumstances so proved.

In the case before us, appellee bought the carbons with the distinct understanding that they were not guaranteed. Upon examining them he had the right to return them immediately and exchange them for other carbons; if, however, the carbons were set, broken or tried, he lost this right. The carbons in question were set, tried and broken. Realizing that he had thus forfeited his right to return the goods, he sought to overcome the effect of the terms of sale by charging that the stones had been doctored in such a way as to prevent him from detecting their defectiveness. Neither he nor his son is able to state that the carbons were doctored; they predicate their whole defense on the inference deducible from the fact that the stones were defective and the defects would have been discovered had it not been that the stones were doctored. To reach this conclusion they first proved that the stones were defective, against which there was no guaranty, and used this fact as the basis of their conclusion that the stones were covered with paraffine or some other substance calculated to deceive. It would signify such a conclusion by calling it anything more than a mere conjecture. Opposed to this evidence, if it may be called such, is the sworn statement of appellant's president and of the president of the Diamond Drill Carbon Company, from whom the carbons were purchased, that the carbons were not doctored or coated with any foreign substance. This, in our opinion, is sufficient to overcome

the vague suspicions which the argument, rather than the evidence, of appellee and his son might create. We, therefore, conclude that the finding of the jury, is flagrantly against the evidence.

No other questions are passed upon.

Judgment reversed and cause remanded for a new trial consistent with this opinion.