## Jackson, et al. v. Morris.

(Decided April 17, 1917.)

### Appeal from Hickman Circuit Court.

Fraudulent Conveyances.—Evidence examined and found insufficient to establish that the transaction assailed was fraudulent.

J. M. BRUMMAL, JR., ROBBINS & ROBBINS and JOE W. BENNETT for appellants.

J. D. VIA for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In October, 1914, Morris, the appellee, recovered a judgment against R. O. Jackson, and in November, 1914, an execution on this judgment was returned "no property found." Thereafter Morris brought this equitable action on his return of "no property found" against the defendant to enforce satisfaction of his judgment, and had summoned as garnishees Crit, Clay and Elmo Jackson, and one Jap Stacy, seeking to discover money or property owned by R. O. Jackson in the possession of these garnishees. On a hearing of the case there was a judgment requiring the garnishees to pay into court for the benefit of Morris an amount sufficient to satisfy the judgment in his favor, which was less than five hundred dollars, and from that judgment the brothers, Crit, Clay and Elmo ask us to grant them an appeal.

Passing all questions as to the pleadings and orders in the case, and going at once to the merits, it appears from the evidence that on March 13, 1911, R. O. Jackson executed to his brothers, Clay and Elmo Jackson, a note for eight hundred dollars, bearing interest at the rate of 8 per cent., and to secure this note gave them a mortgage on a tract of land, which mortgage was put to record in the proper office on the day of its execution. On December 17, 1913, R. O. Jackson sold to Jap Stacy for fifteen hundred dollars the tract of land covered by the mortgage given by him to his brothers. Five hundred dollars of the purchase money was paid in cash, and Stacy executed three notes aggregating one thousand dollars for the balance.

On December 19, 1913, R. O. Jackson, for the purpose of satisfying the note that he had given to his brothers in March, 1911, transferred and delivered to them the

three Stacy notes, they paying to him the difference between the Stacy notes and the amount due on the mortgage note. These notes executed by Stacy were unpaid at the time this suit was brought, except for a credit of about three hundred dollars that Stacy obtained from the Continental Insurance Co. on account of the destruction of a building on the premises insured in this company.

In the present suit the lower court entered a judgment holding that the three Stacy notes were the property of R. O. Jackson; and the brothers of R. O. Jackson, to whom the Stacy notes had been assigned, and Jap Stacy were ordered to pay into court a sum of money sufficient to satisfy the Morris judgment. In other words, the lower court was of the opinion that the assignment of these Stacy notes by R. O. Jackson was a fraud perpetrated for the purpose of defeating the collection of the Morris judgment, and so the only question in the case that we need consider is, does the evidence support the conclusion of the lower court that these Stacy notes were assigned by R. O. Jackson to his brothers without a valuable consideration and for the purpose of defeating Morris in the collection of the judgment?

There is no doubt as to the fact that in March, 1911, R. O. Jackson executed to his brothers the eight hundred dollar note and mortgage, the integrity of which is not questioned, nor is there any evidence tending to show that this eight hundred dollar note, or any part of it, has ever been paid, unless it was paid by the assignment of these three Stacy notes. The brothers of R. O. Jackson testified positively that there was no fraud in the assignment of these Stacy notes to them or purpose to hinder Morris in the collection of his judgment; that they took the Stacy notes as a matter of business for the purpose of satisfying the eight hundred dollar note they had against R. O. Jackson.

The only evidence in the record tending to show that the assignment of these Stacy notes by R. O. Jackson was a mere scheme entered into between R. O. Jackson and his brothers for the purpose of preventing Morris from collecting his judgment, and that R. O. Jackson remained the owner of the notes, consists of declarations made by R. O. Jackson to Mabel Jackson, and perhaps one or two others, in the absence of his brothers, which declarations might be construed to mean that these notes had not been in good faith assigned or transferred by him to his broth-

ers. But these declarations of R. O. Jackson, assuming their competency for the purpose only of affecting his intention in the matter, are not sufficient to overcome the undisputed evidence that these notes were taken by his brothers in settlement of the mortgage note for eight hundred dollars which they held against him. No matter what R. O. Jackson's purpose was, or how desirous he may have been to defeat Morris in the collection of his judgment, his intention cannot be allowed to affect the right of his brothers to these three notes which the evidence shows they took in satisfaction of a debt that was a lien on the land sold to Stacy, and for which he executed the notes transferred to them.

As we have stated, there is no evidence in the record tending to show that this eight hundred dollar note was not executed for a valuable consideration, or tending to show that it was not in fact a bona fide, existing obligation against R. O. Jackson at the time he assigned the Stacy notes for the purpose of paying it. With this controlling fact established by the great weight of the evidence, if indeed it is not entirely uncontroverted, there is no reason why his brothers did not have the legal right to take in settlement of it the Stacy notes.

On the record before us, we think the judgment subjecting any part of the amount due or paid on the Stacy notes to the satisfaction of the Morris judgment was erroneous.

Wherefore, the motion for an appeal is granted, and the judgment reversed, with directions to enter a judgment in conformity with this opinion.