## Linn, et al. v. Brown, et al.

(Decided November 22, 1918.)

### Appeal from Fulton Circuit Court.

1.  Fraudulent Conveyances—Consideration.—One heavily indebted may transfer his property without violating sections 1906, 1907 or 1910, Kentucky Statutes, if he does so in good faith, without design to hinder or delay his creditors, for a valuable consideration, and without intention of becoming insolvent and of preferring one creditor over another.

2.  Fraudulent Conveyances—Consideration.—A transfer of land by a debtor will not be set aside at the suit of creditors if it appear that the transaction was free from fraud and collusion, for an adequate consideration, and was not intended to prefer one creditor over another.

3.  Fraudulent Conveyances— Consideration — Burden of Proof.— Where an old man owes a number of debts and transfers his farm for a valuable consideration to another who is not a creditor, the transferee assuming and agreeing to pay all of the indebtedness of the grantor as then known and estimated, the burden is upon the transferee and debtor to show the bona fides of the transaction, and if this be done to the satisfaction of the chancellor, the transfer should be upheld.

HESTER & HESTER for appellants.

ED. THOMAS for W. A. Brown, Nailing-Keiser Hardware Company and Cue Threlkeld.

J. A. WHIPPLE, J. W. RANKIN, BEN DAVIS and W. J. Mc-MURRAY for the other appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This is an appeal from a judgment in three consolidated cases brought by creditors to have a deed and mortgage declared void, (1) because made with intent to delay and hinder creditors; (2) because without valuable consideration; (3) because made in contemplation of insolvency and with design to prefer one or more creditors to the exclusion of others.

W. J. Maddox, a man past eighty years of age and considerably involved in debt, owned and resided upon a tract of about 160 acres of land in Fulton county, Kentucky, near the Tennessee state line. On September 20, 1915, he sold and conveyed the entire tract to J. M. Linn and wife in consideration of Linn assuming $4,000.00 of mortgaged liens against the land and paying approximately $6,000.00 to other creditors of Maddox. Linn was the son-in-law of Maddox and lived on the farm and in the house with him. The only property owned by Linn was ten horses and mules, twelve cattle, seventy hogs and about $650.00 worth of tools and implements and some other small items. The mules and horses were under mortgage for $500.00, or $600.00. To obtain the $6,000.00 with which to satisfy the outstanding obligations of Maddox, Linn, on November 1, 1915, executed a mortgage on the lands in question to Stahr and Green, both of whom were creditors of Maddox, and these mortgagees furnished money with which to satisfy a number of creditors. Before Linn purchased the property from Maddox and the deed mas made, he and his attorney and Mr. Green undertook to ascertain the exact amount owing by Maddox. In doing this they examined the records in the offices of the circuit court clerk and the county court clerk in Fulton county, and made a list of all of the debts of Maddox which they found there, and they also made inquiry generally of persons concerning the indebtedness of Maddox. After making the list they presented it to Maddox and went over it with him and inquired if he owed other debts but were informed that the list contained all he owed. Maddox was in feeble health and his memory was not good. After the mortgage had been executed to Green and Stahr and the money paid to creditors and after Linn had assumed about $950.00 more of the debts of Maddox and had paid some of the items and executed his personal note to other claimants, it was discovered that the plaintiffs in the suits which were consolidated in this action had been overlooked, and that there were other creditors whose claims had not been included in the list of creditors of Maddox. While the list made up by Linn, Green and others totalled approximately $10,000.00, the total indebtedness amounted to about $13,000.00.

The trial court adjudged both the deed and mortgage void as executed, (1) without valuable considera-

tion; (2) at a time when Maddox owned no other property; (3) in contemplation of insolvency and with design to prefer certain creditors; (4) to hinder and delay creditors. These proceedings were instituted under sections 1906, 1907 and 1910, Kentucky Statutes, entitled "fraudulent and preferential conveyances," and often spoken of as the "act of 1856." By sec. 1906, it is provided that "every gift, conveyance, . . . made with the intent to delay creditors, . . . shall be void." By sec. 1907 it is provided, "Every gift, conveyance, . . . made by a debtor, . . . without valuable consideration, . . . shall be void as to his then existing liabilities." And by sec. 1910, it is provided, "Every sale, mortgage, . . . made by debtors, . . . in contemplation of insolvency and with design to prefer one or more creditors to the exclusion, . . . of others, shall operate as an assignment . . . of all the property and effects of such debtor."

We do not believe that appellees, plaintiffs below, have brought themselves within either of the foregoing sections although they have attempted to do so. That they were and are creditors of Maddox is admitted, but they have not established the fact that the deed or mortgage was made to delay or hinder creditors, or without valuable consideration, or in contemplation of insolvency and with a purpose to prefer certain creditors to the exclusion of others. As frequently held by the courts a debtor may sell or convey his property at will, his creditors to the contrary notwithstanding, if the transaction be fair, free from fraud and not with a design to delay or hinder creditors or prefer one over another. Without going into a detailed statement of all the evidence, suffice to say that every syllable of it proves that old man W. J. Maddox in selling his land to Linn acted in perfectly good faith and without intention of wronging or defrauding any of his creditors. He was very old, infirm and forgetful. His several creditors were harassing him more or less, and some of them were importuning him to execute mortgages upon his property. Apprehending that he would be unable to again enter into business sufficiently to accumulate enough money to discharge a mortgage or mortgages which he might give, he frankly told his creditors that he desired to sell his farm and obtain enough money with which to pay them off and thus get out from under all his obligations. The farm was worth,

according to the evidence, about $75.00 per acre, or about $12,000.00. Some of the witnesses fixed the price as low as $60 per acre, and say that there was only about 153 acres of land; others say the land was worth as much as $100.00 per acre. Maddox sold it to Linn for $10,000.00 with the further provision that Linn was to support and take care of Maddox and his wife so long as they lived, the $10,000.00 being estimated to be sufficient to pay all the debts of Maddox. We are convinced from all the evidence that Maddox, the debtor, was anxious to pay all of his just obligations and was not intending to hinder or delay his creditors when he sold and conveyed his land to Linn. Several days were taken up by Linn and his attorney, Mr. McMurry, Green and Stahr in an attempt to marshal all the claims against Maddox and to definitely determine the exact amount of his indebtedness. It was no secret investigation, but an open, inquiring and searching one, intended to elicit information from the public generally of claims against Maddox. On account of the extreme age of Maddox he was forgetful and of but little assistance in determining who he owed or the amounts of the several claims. In giving his deposition, however, he was asked about many transactions and various debts and his answers were frank and appeared to be those of a man moved by honest purposes. Linn likewise acted in good faith, viewed in the light of the evidence, for he exercised every reasonable precaution to ascertain the indebtedness of Maddox before purchasing the lands and assuming the debts, and every cent of money which he obtained for the mortgage to Green and Stahr was applied to the extinguishment of debts. In addition to this, he gave his own personal note to take up the note of Maddox in several instances. The deed to Linn was not made and he did not asume the indebtedness of Maddox until all claims against Maddox, as Linn supposed, had been listed and cast up and found to amount to about $10,000.00. Linn was not a creditor of Maddox and Maddox was not insolvent.

Green and Stahr, the mortgagees who provided the money with which to pay off a number of claims against Maddox, are honorable business men of Fulton county, according to this record. They also were cautious and careful in these transactions, and evidence of bad faith on their part is lacking.

The deed from Maddox and wife to Linn and wife was not made to delay, hinder or defraud the creditors of Maddox, but on the contrary was made with intention of fully paying and satisfying each claim, and was not, therefore, void as within section 1906; neither was said deed made by Maddox to Linn without valuable consideration, but on the contrary was made for a full and fair consideration, and is not within section 1907, nor was the deed by Maddox to Linn made in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion of others, but was made with one purpose only, and that to raise sufficient money to pay all of the debts of Maddox in full.

The appellees, plaintiffs below, rely upon alleged badges of fraud attendant upon the two transactions, deed and mortgage, (1) transfer from father-in-law to son-in-law and daughter; (2) want of consideration; (3) the heavy indebtedness or insolvency of Maddox; (4) the mortgage to Green and Stahr, they being creditors, was a preference.

Let us consider each of these alleged badges of fraud in the light of the evidence introduced on both sides. While it is true that Maddox is the father-in-law of Linn, and Linn and wife resided in the house with Maddox, there is no evidence of collusion or wrongdoing between them, but on the contrary Maddox attempted to sell the lands to other persons in preference to Linn in order to raise sufficient money to pay his debts, and only consented to trade with Linn when he found it impossible to sell directly to some one else. The trade was open and public, and the deed placed of record. The consideration was not only fair but full under all the facts, and there is no evidence adduced which cast suspicion upon the transaction as between the father-in-law and son-in-law. Maddox was not insolvent at the time he made the deed to Linn although he was heavily indebted. Aside from the farm worth $12,000.00 he had a valid mortgage for $3,000.00 upon a tract of land in Tennessee and some other property. True this mortgage was released some weeks after the deed was executed, but with the agreement and understanding on the part of Maddox that money would be provided with which to pay off certain obligations which were pressing. The release of this mortgage, however, some time after the execution of the deed, did not relate back and affect the deed made in

good faith on September 20th. While Green and Stahr were creditors of Maddox, they were not creditors of Linn until the mortgage was made by Linn to them, at which time they advanced money and assumed certain of Maddox's obligations. Indebtedness created simultaneously with the execution of a mortgage has frequently been held not to come within the statutes, and the only indebtedness of Linn to Stahr and Green was so contracted. Moreover, Stahr and Green, in furnishing the money to Linn with which he discharged the debts of Maddox, did so in the honest belief that the funds furnished were sufficient, when added to the amount assumed by Linn, to take up all the existing indebtedness of Maddox.

The general doctrine is well stated in 12 R. C. L., sec. 10, where it is said: "The owner of property, though he be greatly indebted or even insolvent, may sell it and give good title to a *bona fide* purchaser despite his creditors, up to the time when they shall have acquired a lien. The prevailing doctrine in this country is that indebtedness at the time of a voluntary conveyance creates a *prima facie* presumption of fraud, *and no more,* and that each case must largely depend on its own circumstances, the amount of the indebtedness, the condition of the grantor's business affairs, and any other facts bearing upon the question of fraud. . . . If a debtor be actually insolvent, he may still dispose of his property for a valuable consideration *in good faith,* but it seems to be well settled that he will not be permitted to alienate his property and place it in a position where it is not subject to process in behalf of his creditors, unless there has been received a *full* and *fair consideration* for the property transferred, and the same has been made *in good faith,* and any transfer made in contemplation of insolvency is invalid under the same circumstances as if made by the debtor where actually insolvent. The insolvency of a grantor known to the grantee is not of itself conclusive evidence of the bad faith of the transaction."

While badges of fraud, such as want of consideration, failure to record a mortgage and the like, cast the burden of proof upon the transferee or beneficiary, they are not conclusive and may be overcome by evidence establishing the *bona fides* of the transaction. There were several things connected with the execution of the deed

and mortgage which, without explanation, discredit them, and which are ordinarily called badges of fraud, and these things cast upon Maddox and Linn, Stahr and Green the burden of showing the good faith and fairness of the transaction. By the evidence they have sustained these burdens and fully overcome all inferences of fraud and bad faith which arose in this case, as in others, from the intimate relation of the parties, the nature of the deed and consideration, and the heavy indebtedness or insolvency of Maddox.

The trial court erred in adjudging the deed and mortgage void and the lands in question subject to the debts of the complaining creditors, and directing a sale therof.

Several other questions are presented which it is unnecessary to discuss here. On a return of the case the chancellor will enter personal judgment only against Maddox and sureties, enforce the mortgage on personal property, and dismiss the petitions in so far as they seek to set aside the deed and mortgage.

Judgment reversed.