### Carter, et al. v. Braswell.

(Decided February 3. 1920.)

### Appeal from Allen Circuit Court.

1.   Fradulent Conveyances—Validity of Conveyance—Bona Fide Purchaser.—Under Kentucky Statutes, Section 1906, declaring conveyances in fraud of creditors to be void, a conveyance made by a grantor with intent to defraud creditors will not be avoided where the purchaser did not have notice of the fraudulent intent or participate in the fraud.

2.   Fraudulent Conveyances—Actions—Evidence.—In a suit by a creditor of a grantor to set aside a conveyance as being in fraud of his rights, evidence held to show that the grantee was an innocent purchaser for a valuable considration.

BRADBURN & BASHAM and FRANK GOAD for appellants.

NOEL F. HARPER and GILLIAM & GILLIAM for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

G. W. Follis and L. M. Follis purchased A. G. Braswell's interest in their mercantile establishment and executed to Braswell their promissory note for $1,350.00, with W. B. Foster as surety. Braswell sold and endorsed the note to the National Bank of Scottsville. The bank brought suit on the note in the Allen circuit court and recovered a judgment against the makers and Braswell as endorser. Thereafter, the bank caused an execution to issue on the judgment, which was returned, "No property found," on August 30, 1917. A similar execution was issued at the direction of Braswell and this execution was also returned, "No property found." In the month of January, 1916, W. B. Foster conveyed by separate deeds, to his son-in-law, T. Y. Carter, two tracts of land located in Allen county, one of which contained about 200 acres, and the other about 87 acres. Charging that these

conveyances were made by Foster with a fraudulent intent to cheat, hinder and delay his creditors, including the plaintiff, A. G. Braswell brought this action to set aside the conveyances in order that the land might be subjected to the payment of the judgment in favor of the bank. After interposing a special demurrer challenging the right of plaintiff to bring the action to obtain the relief prayed for, defendants denied the allegations of fraud. Carter also pleaded facts showing that he was a purchaser for value, without notice of Foster's indebtedness to plaintiff or of any fraudulent intent on the part of Foster. The special demurrer was overruled, and on final hearing judgment was rendered setting the conveyances aside. Defendants appeal.

The facts developed by plaintiff's evidence, and upon which he relies to set aside the conveyances, are as follows: After signing the note Foster learned that the Messrs. Follis, for whom he was surety, were heavily involved, and admitted that he did not intend to pay the note as it was not his debt. He owned not only the land involved in this action, but another tract in Tennessee where his son-in-law lived. In making conveyances to his son-in-law, he reserved the house and two or three acres of ground worth about $1,000.00, and conveyed to his son-in-law only the remainder of the Kentucky land. thus placing the Kentucky land beyond the reach of his creditors. Dr. Carter had advanced Foster large sums of money, covering a period of years prior to the transaction in question, and did not make the trade by which the land was conveyed to him until just prior to the time the Follis business went into the hands of a receiver. The consideration recited in the deed was $3,000.00, while Carter claims that he paid $6,600.00 for the land. Even this amount was far less than its real value, for several witnesses for plaintiff testified that the land was worth from $35.00 to $40.00 an acre.

On the other hand, the evidence for the defendants shows that there were lien debts on the land in controversy, one of which was due to Braswell, amounting to about $3,500.00, and that in addition to the payment of these debts Carter also advanced and furnished to Foster money amounting to about $3,100.00, thus making the consideration for the land about $6,600.00. At the time of the conveyances the land conveyed was worth between $5,000.00 and $6,000.00. The conveyances were made

prior to the suit by the bank, and the sales had been agreed on for several months before that time. Carter did not know that Foster was on the note in question, or that he was indebted to anyone else. He only knew that Foster was indebted to him. The sale was made in good faith, without any agreement or understanding on the part of Foster that he was to reconvey the land to Carter. After the conveyances, Carter put improvements amounting to about $1,200.00 on the land in controversy.

This suit was not brought under the act of 1856 to set aside the conveyances as a fraudulent preference, nor could such a suit have been brought at that time because more than six months had elapsed since the conveyances were made. The suit was brought under section 1906, Kentucky Statutes, providing among other things that every conveyance of real estate, made with the intent to delay, hinder or defraud creditors, purchasers or other persons, shall be void, but protecting the title of a purchaser for a valuable consideration unless he had notice of the fraudulent intent. Construing this statute, it has often been held that although the grantor may have made the conveyance with the fraudulent intent to defeat his creditors, yet the title of a purchaser for a valuable consideration will not be affected unless he had notice of the fraudulent intent or participated in the fraud. Interstate Petroleum Co. v. Farris, 159 Ky. 820, 169 S. W. 535.

Striking an average between the value of the land at the time of its conveyance as fixed by the witnesses, we cannot say that the consideration paid by Carter was so disproportionate to its real value as to raise the presumption of fraud, nor can we say that there are any circumstances in the case from which it can be fairly inferred that Carter had any notice of the fraudulent intent on the part of Foster, or participated in Foster's fraud. Indeed, the greater portion of the consideration was actually applied to the payment of Foster's debts, and this circumstance was calculated to impress Carter with the good faith of Foster, rather than to excite the suspicion that Foster was making the sale for the purpose of defeating some other creditor. Carter's good faith was further shown by the fact that after the purchase he placed improvements on the land of the value of about $1,200.00. American Brewing Ass'n v. Mc-Gruder, 32 S. W. 603. Considered as a whole, we think the evidence sufficient to show that Carter was an inno-

cent purchaser for a valuable consideration. It follows that the chancellor erred in adjudging that the conveyances to him should be set aside.

This conclusion makes it unnecessary to determine whether Braswell, who endorsed the note to the bank, could maintain the action without having first paid some portion of the judgment.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.