## Whitaker, et al. v. L. G. Davidson, Assignee of W. E. Whitaker.

(Decided June 19, 1925.)

### Appeal from Garrard Circuit Court.

1. Pleading—Allegation of Petition Taken as True on Demurrer.— Allegation of petition that transfer of note sought to be set aside was made without consideration must be taken as true on demurrer.

2. **Fraudulent Conveyances—Assignee of Note, Transferred Without Consideration, Not "Bona Fide Purchaser."**—One to whom note is transferred without consideration is not bona fide purchaser, within saving clause of Kentucky Statutes, section 1906, though without knowledge of tranferor's intent to defraud creditors.

3. **Pleading—Failure of Petition to Set Aside Transfer of Note to Aver Assignee's Knowledge of Assignor's Fraudulent Intent Held Cured by Answer and Other Pleadings.**—Failure of Petition to set aside transfer of note, as made to defraud creditors, to aver that transferee had knowledge of transferor's fraudulent intent, held cured by answer alleging lack of knowledge, which was traversed of record and treated as issue.

4. **Fraudulent Conveyances—Finding that Transfer of Note was Fraudulent Held Not Supported by Evidence.**—Chancellor's finding that transfer of note was made to defraud creditors held not supported by evidence.

5. **Fraudulent Conveyances—Fraud Must be Proven.**—Fraud in transfer of note must be proven.

W. J. BAXTER for appellants.

LEWIS L. WALKER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

This is an action brought by the assignee of W. E. Whitaker under sections 1906 and 1907 of the Kentucky Statutes, to set aside a transfer of a note by W. E. Whitaker to his brother, the appellant, Arch Whitaker, because, as alleged, such transfer was made without consideration and for the purpose of cheating, hindering, delaying and defrauding the creditors of W. E. Whitaker. The appellant pleaded that he was a *bona fide* purchaser for value of said note and without knowledge of any intent on the part of W. E. Whitaker to so cheat and defraud his creditors. The lower court held the transfer fraudulent and from that judgment appellant appeals.

Appellant first insists that the petition is defective in that it fails to aver that he had knowledge of the alleged fraudulent intent of his brother. The petition, however, avers that the transfer was made without consideration, and if that allegation be true, as it must so be taken on demurrer, then appellant was not a *bona fide* purchaser of the note, and so not within the saving clause of section 1906 of the statutes, *supra*. Hence the petition

stated a good cause of action. Moreover, in his answer, appellant specifically pleaded his lack of knowledge of the fraudulent intent of his brother, which allegation was traversed of record, and was treated by the parties as an issue in this case. It is, therefore, obvious that there is no merit in the first contention of appellant.

The other contention of appellant is that the evidence does not support the finding of the chancellor and with this contention we agree. The facts shown are that about 1917 W. E. Whitaker, who was then in very good circumstances, bought a horse on credit from the appellant for the sum of $200.00. It is true that appellant does not remember where he got this horse, but inasmuch as this suit was filed about five years after this transaction, during which time appellant had been a very busy man, this failure of memory on his part, while is may arouse a suspicion, does not amount to proof of fraud. In the same year appellant sold his brother, also on credit, $50.00 worth of hay. There was no charge made on any books for either the horse or the hay, nor was any note given for the same, but this is not even suspicious, because brothers who live in affectionate relationship and trust one another do not often require notes or make charges on books as evidence of transactions between them. Between 1917 and the fall of 1920, appellant lent his brother at various times sums of money, the last being $200.00 in September, 1920, at which time appellant and his brother testified that the latter gave appellant a note covering the then indebtedness of W. E. Whitaker to appellant amounting to $700.00. The United States revenue stamps on this note were cancelled either one or two years after the date of the note. We state it thus indefinitely as the note has been lost from the record, but it is agreed between the parties that the statement as made is correct. Again it is sought to give a sinister aspect to this by inferring that the note was dated back but that the parties failed to date the cancellation of the stamps back. On the other hand, it is well known that in transactions between laymen ignorant of the requirements of the U. S. revenue laws, notes were often given without stamps being affixed thereto, and later when some question came up in law about such notes, stamps were then affixed and cancelled. W. E. Whitaker was solvent at the time this note was given. It was payable in January, 1921. After giving the note, he entered into a contract to purchase some land. He

had been dealing extensively in lands and when the slump came in the winter of 1920 and spring of 1921, he was unable to meet his maturing obligations. In February, 1921, he was sued on this land contract made in the previous fall. In the meantime he had been unable to meet the note due appellant in January and he gave to him as collateral security a note for $1,750.00, the maker of which was one Whiteted. Whiteted made an assignment for the benefit of his creditors in February, 1921. It is not clear by any means that excluding the contingent liability W. E. Whitaker was under on account of the suit filed against him in February, he was then insolvent in the sense that his assets were not equal in value to his liabilities, although he was having a hard time to meet his maturing obligations due to lack of ready cash. The evidence without a doubt discloses that in order to raise ready cash he tried to sell this Whiteted note to other people in Garrard county, and for as low a sum as $1,250.00. He was unable to sell it, however, because, although, as it turned out, the property on which this note was a first lien was amply sufficient to discharge it in full and did so do, yet at that time the maker of the note had made an assignment, there was about two years back interest on it unpaid, both of which facts affected its marketability very much. Moreover, securities of the highest type, such as government bonds, were then selling at a great discount and the prevailing rate of interest in Garrard county, where money was exceedingly hard to get and land values were dramatically tumbling, was eight per cent. Being in need of some ready cash, W. E. Whitaker, on March 3, 1921, transferred the note to the appellant in payment of the $700.00 note that had fallen due in the previous January and for an additional sum of $700.00, which the evidence clearly and satisfactorily shows was then paid by appellant to his brother in cash and out of his bank account in the Farmers' Exchange Bank of Nicholasville, in which town appellant then was and had been for some time conducting a restaurant business. A copy of his bank account has been brought to this court, beginning August 10, 1920, and running to June 29, 1921. It shows that his balance during that period, except toward the latter part thereof, averaged from $400.00 to $600.00 and ran as high as even $800.00. We do not think there can be any doubt but that this money was paid to W. E. Whitaker and was appellant's money. In August, 1921, the suit which had

been filed against W. E. Whitaker in the previous February came on to be tried and a verdict was rendered against him for $5,500.00, which verdict probably made W. E. Whitaker insolvent. He thereafter filed his assignment and still later his petition in bankruptcy. The appellant says that he did not know anything about this suit being filed against his brother until long after the verdict above mentioned had been rendered. At this time they were living some sixteen or twenty miles apart, and there is nothing unusual in this statement. There was a great deal of evidence introduced to which no objection has been made to the effect that the appellant and his brother were both men of high character and integrity, well thought of as honest men in the community in which they lived. Both of them swear that there was no intent to cheat or defraud any creditors, and that Arch Whitaker particularly took this note innocently and for value. W. E. Whitaker swears that he thought himself solvent in the spring of 1921, in that his assets equalled his liabilities, and he still insists that had he not been pushed he could have paid out in full, at least in the absence of the verdict rendered against him in the following August. Appellant and his brother have both made a full disclosure of all the transactions surrounding the transfer of this note. It is true that the note on their statement was sold at quite a discount, but as pointed out above even government bonds were selling at a discount of almost 15% at this time, and the market value of a note, as is well known, is undoubtedly affected by the fact that the maker of the note has made an assignment, and there is much back interest unpaid. Hence we do not regard the discount at which this note was sold under the facts of this case as a very convincing badge of fraud.

Fraud must be proven. In the case of Winfrey's Trustee v. Winfrey, 150 Ky. 138, 150 S. W. 42, which was an action brought to set aside an alleged fraudulent conveyance, this court said:

"It is frequently difficult to prove fraud, save by circumstantial evidence; and where the parties, charged with the fraudulent collusion, occupy the position of parent and child, brother and sister, or husband and wife, the court will scrutinize most closely transactions between them. The mere fact of relationship of the parties, and loss to the credi-

tor, is not sufficient to establish fraud. The presumption of integrity of purpose in their transactions is not overcome, except by direct or circumstantial proof sufficient to produce a conviction of the existence of fraud." Cf. S. Rose Co. v. Hasenzahl, 141 Ky. 676, 133 S. W. 547.

In the case at bar the facts to establish fraud are no stronger than those held insufficient in the Winfrey case, *supra,* and in the cases of American Brewing Co. v. McGruder, 17 Ky. L. Rep. 762, 32 S. W. 603; Pence v. Shackelford, 142 Ky. 10, 133 S. W. 956; Interstate Petroleum Co. v. Farris, 159 Ky. 820, 169 S. W. 535; and Carter v. Braswell, 186 Ky. 760, 217 S. W. 1019.

Therefore, the judgment of the lower court holding the transfer here in question was fraudulent is erroneous, and for that reason it is reversed with directions to dismiss appellee's petition.

The record in this case is of the same character as that condemned in the case of Pendleton v. Garrard Bank and Trust Co., decided on June 5, 1925. However, as the clerk and reporter who made the record in that case are the same as the ones who made it in this case, we will not add a penalty in addition to that imposed in the case, *supra,* but simply call attention again to the fact that records of this character should not be sent to this court.