## Farmers' & Merchants' Bank v. Blue et al.

(Decided March 25, 1930.)

584

C. J. WADDILL and J. W. POWELL for appellant.

WILLIAM J. COX and JOHN J. GRAYOT for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Farmers' & Merchants' Bank of Slaughters, Ky., on September 1, 1928, instituted an ordinary action against W. N. Blue and three of his brothers to recover a judgment upon three promissory notes aggregating $5,039.38, with interest from various dates. W. N. Blue and Owen Blue signed the three notes. M. A. Blue signed two of them, and H. L. Blue executed one of the series. On September 4, 1928, an affidavit for an attachment against the property of the four defendants was filed and orders of attachment were issued. A levy was made upon three tracts of land described in the return of the officer as the property of W. N. Blue, and the orders of attachment were served upon several garnishees. The answers of the garnishees disclosed nothing due any of the defendants. W. N. Blue denied the grounds of attachment, and filed an affidavit claiming his statutory exemptions. A personal judgment was rendered against W. N. Blue and Owen Blue for the entire amount of the notes with accrued interest. H. L. Blue and M. A. Blue were not served with process. L. E. Blue, another brother of W. N. Blue, and William J Cox filed motions to discharge the attachments and to quash the levy thereof upon the respective tracts of land which had been conveyed to them by W. N. Blue and wife. Thereupon the bank filed an amendment to its pleading attacking the conveyances to L. E. Blue and William J. Cox as fraudulent under section 1906, Kentucky Statutes. William J. Cox and L. E. Blue filed separate answers traversing the allegations of the amended pleading, and, upon hearing the proof, the court sustained the attachment, but held that L. E. Blue purchased the 84¼ acre tract of land and that William J. Cox purchased the 92 and 82 acre tracts, without notice of any fraudulent intent, and discharged the levy of the attachment on all the land. The bank appeals.

It is insisted for appellant that W. N. Blue sold and conveyed the lands with the fraudulent intent to cheat, hinder, and delay his creditors, and that the purchasers had notice, or were chargeable with notice, of the

fraudulent purpose. It is conceded by appellant that the statute against fraudulent conveyances protects a bona fide purchaser for value; that a valuable consideration, as contemplated by the statute, means a fair equivalent of the thing bought, and that it is necessary, to defeat the purchase, to prove knowledge on the part of the purchaser, which knowledge, however, may be implied from circumstances. Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050. The evidence in this case discloses that W. N. Blue was indebted to the bank on some direct obligations not involved in this action, and that he was surety for his brothers on the three notes which were the basis of the present suit. He also owed other debts. He owned a tract of land consisting of 84¼ acres which he sold and conveyed to his brother, L. E. Blue. He also owned a one-half interest in two other tracts of land comprising 174 acres which had been conveyed to him and his wife many years before. William J. Cox owned a large boundary of land adjacent to the 174 acres owned by W. N. Blue and wife.

The Blue land was between the Cox land and the public road, and Mr. Cox had desired to purchase it to put his land on the road. This purpose had been made known to Mr. Blue. Cox was approached as a prospective purchaser of the land, and a price was named which was satisfactory to him and which was the present fair value of the land. Cox investigated the title, and found that it was clear and that no suit had ever been filed against Blue. He had no knowledge of any debts owed by Blue, but was informed, after he had concluded the purchase, that Blue desired to sell in order to pay his debts. The consideration paid by Mr. Cox for the two tracts of land was $4,900. The price originally suggested was $5,000, but Blue desired to remain on the property until December, and was allowed to do so in consideration of a reduction of $100 in the purchase price. One-half of the $4,900 legally belonged to Mrs. Blue, which left $2,450 belonging to W. N. Blue. Of this amount $1,000 was exempt as the proceeds of his homestead. That left $1,450 applicable to debts. About $1,000 was paid to the appellant bank in discharge of debts due it from Blue. From the remaining $450 Blue paid a tax lien of $168. This left only $282 which Blue applied to other debts. Mr. Cox testified that he had no notice of any intent to defraud the bank or any other creditor. He had known Mr. Blue for many years, and there was nothing in his character or career to suggest that he

would perpetrate a fraud. We find nothing in the record to justify an inference that there was any fraud in the transaction with Mr Cox, or that he had any reason to suspect the good faith of Mr. Blue. Carter v. Braswell, 186 Ky. 760, 217 S. W. 1019; Ballard v. Security State Bank, 219 Ky. 468, 293 S. W. 950.

On the same day, August 28, 1928, W. N. Blue sold to his brother, L. E. Blue, his other land, for the recited consideration of $2,000. That property belonged entirely to W. N. Blue. Blue testified that he owed several debts to his brother who was directed to calculate the amount due, deduct it from the purchase price of the land, and pay the difference. L. E. Blue produced uncontradicted proof of the genuineness of the indebtedness. It exceeded $1,300, leaving a balance of $616, which was paid by check to W. N. Blue. W. N. Blue could not pay all of his debts. He owed his mother a considerable sum, and gave her the check of his brother to credit on that debt. He also paid a small amount to his sister, to whom he was indebted in the sum of $1,000. The validity of the debts due his brother, mother, and sister is not questioned. The consideration paid for the land was ample, and we find no evidence warranting a conclusion that there was any fraud in the transaction on the part of W. N. Blue; certainly no knowledge thereof on the part of L. E. Blue. Subsequently W. N. Blue was solicited by the bank to give a mortgage on the property, and his conversation was then evasive and lacking in candor, but neither L. E. Blue nor William J. Cox had any knowledge of that subsequent transaction. It could not affect them, and was not competent as evidence against them. The declarations or conduct of a vendor, made after alienation, cannot affect the alienee, unless acquiesced in by the latter. Boli v. Irwin, 51 S. W. 444, 21 Ky. Law Rep. 366; Cogar v. National Bank of Lancaster, 151 Ky. 470, 152 S. W. 278; Jackson v. Morris, 175 Ky. 107, 193 S. W. 1023. Although L. E. Blue was a brother of W. N. Blue, he was not living with him, and sustained no business connections with him. If the relationship between them was sufficient to shift the burden of proof from the plaintiffs to the defendants (Magic City Coal & Feed Co. et al. v. Lewis et al., 164 Ky. 454, 175 S. W. 992; Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050), that burden was amply sustained. Interstate Petroleum Co. v. Farris, 159 Ky. 820, 169 S. W. 535; Farmers' National Bank v. Howard, 215 Ky. 250, 284 S. W. 1050; Whitaker v. Dav-

idson, 209 Ky. 698, 273 S. W. 485; Winfrey v. Winfrey, 150 Ky. 138, 150 S. W. 42.

The evidence manifests the entire good faith of the purchasers, and that a fair consideration for the land was paid. It is true that Blue sold all his land, but he promptly applied the proceeds to his debts, without discrimination against appellant. In so far as the debt of L. E. Blue was deducted from the consideration, it amounted merely to a preference, and the transaction was not attacked under section 1910, Kentucky Statutes. Farmers' Bank & Trust Co. v. Peters, 226 Ky. 403, 11 S. W. (2d) 103; King v. Moody, 79 Ky. 63. W. N. Blue had not made a success in recent years, and testified without contradiction that he proposed to change his occupation, and desired to pay as much as possible on his debts. He had advised the officers of the bank that he would pay his own direct obligations, but would be unable to pay the obligations of his brothers upon which he was surety. It is plain that Blue paid the bank as much as it would have realized if the money received by him, and which was subject to his debts, had been applied pro rata upon all his obligations. In any event, the bank did not choose to attack the payments as preferential, but sought to subject the land, although it had been sold and paid for and a substantial part of the proceeds paid to it on direct debts of W. N. Blue. The court will be alert to detect and frustrate fraud, and no device, subterfuge, or contrivance can be allowed to defeat the rights of creditors; but actual sales honestly made and bona fide transactions may not be disturbed. Hickman Bank & Trust Co. v. Pickard, 207 Ky. 772, 270 S. W. 30; Linn v. Brown, 182 Ky. 166, 206 S. W. 287; Winfrey v. Winfrey, 150 Ky. 138, 150 S. W. 42; Whitaker v. Davidson, 209 Ky. 698, 273 S. W. 485. One is not forbidden to sell his property merely because he is indebted. If such a rule obtained, every honest debtor might be disabled from paying his debts. Violett v. Violett, 2 Dana, 325; Ballard v. Security State Bank, 219 Ky. 468, 293 S. W. 950.

The evidence sustains the finding of the circuit court, and the record manifests no ground for disturbing the judgment. Farmers' Bank & Trust Co. v. Peters, 220 Ky. 403, 11 S. W. (2d) 103; Francis v. Vastine, 229 Ky. 431, 17 S. W. (2d) 419; McDowell v. Edwards, 156 Ky. 475-483, 161 S. W. 534.

The judgment is affirmed.