## Commonwealth, for Use, et al. v. Filiatreau, et al.

(Decided December 8, 1914.)

### Appeal from Marion Circuit Court.

1  Fraudulent Conveyances—Remedies of Creditors—Evidence.— Fraud is not to be presumed; but circumstances may be shown of such character as to create inferences making peremptory demand for explanations. Transactions had between father and son after the birth of a child by a girl whom the son had seduced, the effect of which transactions was to prevent the collection of a judgment in bastardy proceedings against the son, demand candid and satisfactory explanations, and such have not been afforded in this case.

2  Equity—Maxims.—The maxim, "He who comes into equity must come with clean hands," imposes itself alike upon him who defends and upon him who prosecutes a suit in equity; upon him who seeks protection as well as upon him who asks affirmative

aid. The maxim is broad enough to demand that he who seeks from the chancellor protection, must yield to the chancellor that full measure of confidence and truth, the lack of which must necessarily repel him from a forum whose very foundation is mutual confidence and good faith.

H. W. RIVES for appellant.

BEN SPALDING for appellee.

OPINION OF TNE COURT BY JUDGE HANNAH—Reversing.

In September, 1911, R. O. (Dick) Filiatreau, who lived on a farm lying partly in Washington and partly in Marion county, accomplished the ruin of Elizabeth Corbett, a young girl, the sister of his wife. In January, 1912, he procured for her certain medicine for the purpose of producing an abortion, but it failed to have the desired effect. In June, 1912, she was delivered of a child.

In August, 1912, a bastardy proceeding was instituted against Filiatreau in the Marion County Court, which resulted in a judgment against him of seventy-five dollars and the costs, payable immediately, and seventy-five dollars payable semi-annually thereafter during the minority of the child. A writ of *fieri facias* having been returned *nulla bona,* this proceeding in equity was instituted in the Marion Circuit Court to enforce the satisfaction of the judgment.

William Filiatreau, father of Dick Filiatreau, was made a party defendant, it being charged in the petition that Dick Filiatreau had fraudulently transferred to his father certain live stock worth seven hundred dollars, for the purpose of defeating his liability under the judgment above mentioned.

Dick Filiatreau answered, but failed to deny the charge of fraudulent transfer, his only plea being that he had, on December 21, 1912, filed a petition in bankruptcy in the United States Circuit Court for the Western District of Kentucky, and was therein adjudicated bankrupt; that the judgment sought to be enforced was proven in that proceeding as a claim against the estate in bankruptcy. He was present at the taking of the depositions, but did not testify.

This appeal is prosecuted only as against William Filiatreau, the court, upon submission of the cause, having adjudged that so much of the petition as sought a recovery against him should be dismissed.

It appears, from the testimony, that in the spring of 1912, and after he had learned that the medicine he had procured had failed to produce the desired effect, Dick Filiatreau had on his farm five mules, three jacks and two jennets. He sold one of the mules to his uncle, C. R. Filiatreau, and the other to a man named Brent.

At the time of the birth of the child to Elizabeth Corbett, he had on his farm three mules, three jacks and two jennets. Of the three mules, he still has one. The other two were thereafter taken to the farm of his father, William Filiatreau, and William Filiatreau sold them to his brother, C. R. Filiatreau, for two hundred and sixty dollars.

William Filiatreau testified that these two mules were purchased by Dick Filiatreau when they were weanlings, but that he furnished the money to pay for them. They were past three years old, and had been reared by Dick Filiatreau, the father never having had either of them in possession nor exercised any act of ownership over them. The only explanation offered by William Filiatreau as to why his son should have kept these mules so long, and then turned them over to him just in time to evade the collection of the judgment here sought to be enforced, is that these mules were smaller than other mules owned by him of the same age, and for that reason he wanted to keep them separate. This explanation is not satisfactory, nor is the testimony clear as to the exact nature of the arrangement under which William Filiatreau claimed to be the owner of these mules. The proof is decidedly insufficient to show that they were, in fact, his property.

It appears from the evidence that these mules were not worth more than the price for which they were sold; and William Filiatreau must account for the two hundred and sixty dollars which he received for them.

As to the three jacks and two jennets, it appears from the evidence that, after the birth of the child to Elizabeth Corbett, William Filiatreau gave his son Dick a check for two hundred dollars; and it is claimed by William Filiatreau that he and his son Dick owned the three jacks and two jennets jointly, and that this check was given by him as the purchase price of his son's interest. He says that Dick came to his house and stated that he was owing Henry Corbett a debt of two hundred dollars and that he wanted to sell the "jennets" in order to get the money to pay Corbett; "he said Henry was

bound to have it and wanted to know if I would take the jennets and give him the money." And, without seeing them, William Filiatreau gave him the check "for his interest in the stock." The jennets were taken to the father, two of the jacks are yet remaining at Dick's.

These animals had been reared by Dick Filiatreau, being the progeny of a jennet which his father had once given him; and how it was that William Filiatreau came to have an interest in them amounting to the whole of their value except two hundred dollars, is left to conjecture. One of these jacks appeared to have died prior to the institution of this suit, and the record does not clearly establish the value of the two remaining jacks and the two jennets, but the value of these two jacks and two jennets should be ascertained, and William Filiatreau must either account therefor or surrender the animals for sale herein in satisfaction of the judgment sought to be enforced.

It appears from the evidence, however, though not very clearly, that the two hundred dollars which William Filiatreau claims to have paid his son for this property, was applied to the satisfaction of a claim which the son owed, and we think William Filiatreau should be credited with this amount out of the proceeds of, or as a credit against, the value of the animals, the two jacks and two jennets.

It is a wise and ancient rule that fraud is not to be presumed; that a presumption of innocence, and of good faith, and of fair dealing attends upon all the lawful transactions of all men; and that upon him who asserts a charge of fraud is cast the burden of sustaining his accusation.

But, while fraud is not to be presumed, it is not required of him who charges it that he should enter into the secret councils of the perpetrators thereof and wrest therefrom the direct evidence of their wrong-doing. Fraud may be inferred; circumstances may be shown of such character as to create inferences making peremptory demand for explanation.

In this case the challenged transactions were had about the time, or very shortly after the birth of the child to Elizabeth Corbett, and between Dick Filiatreau and William Filiatreau, his father, who lived within two and a half miles of each other. In the short space of a few days, the mules, jacks and jennets, which had been wont to disport themselves over the grassy swards of

Dick Filiatreau's farm, had ceased to be his. William Filiatreau, his father, became their pretended owner. And these same mules, jacks and jennets constituted practically all the property of which R. O. Filiatreau had been possessed which could be subjected to his debts, his farm being encumbered with liens amounting to a large percentage of its value.

Such things as these occurring *inter familia,* at such a time and under such circumstances as are here shown, call for more satisfactory explanations, for more candid testimony by the principals, and for a greater elaboration of the details of the transactions had between father and son than was exhibited in this case.

The maxim—He who comes into equity must come with clean hands—imposes itself alike upon him who defends and upon him who prosecutes a suit in equity; and its requirements are not satisfied by a fulfillment of the literal language of its demand. Be his hands spotless as they may, he does not merit the protection of the chancellor who fails to make a full and free disclosure of all the facts relating to his claim. The maxim is broad enough to demand that he who prays from the chancellor protection as well as he who seeks affirmative aid, must openly and frankly, without reservation or evasion, yield to the chancellor that full measure of confidence and truth which is prerequisite to the assertion and exercise of chancery powers, and the lack of which must necessarily repel him from a forum whose very foundation is mutual confidence and good faith.

The judgment is reversed.