## Francis et al. v. Vastine et al.

(Decided March 19, 1929.)

(As Modified, on Denial of Rehearing, June 4, 1929.)

432

OMER C. STUBBS and E. R. RIVARD for apellants.

ROGERS & ROGERS and H. J. BEIMFORDE for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On November 3, 1921, Grace Hall sold and conveyed to George Vastine and Fannie Vastine, his wife, a house and lot in Covington. The conveyance was to "George Vastine and Fannie Vastine, his wife for their joint lives, with the remainder in fee to the survivor." George Vastine paid $500 in cash on the purchase price, and the balance of $1,750 was secured by placing a mortgage on the property in favor of a building and loan association. Some payments had been made, and at the time this litigation arose the balance due on the mortgage was a little more than $1,500.

In the latter part of 1923, George Vastine left his wife and disappeared. Whereupon she instituted suit against him for divorce. In her petition she sought no alimony, but she alleged that the reason why she did not ask for alimony was because her husband was a nonresident of the state. After the institution of her suit she learned that he was in Detroit, and, through her attorney, she opened negotiations with him in an effort to induce him to contribute towards her support and the support of an infant daughter. As the result of these negotiations on July 31, 1924, he executed a deed of conveyance to her whereby he conveyed any interest that he had in the property. The deed recited that the consideration was love and affection.

At the time George Vastine disappeared from his home he was indebted to the First National Bank of Latonia in the sum of $500, evidenced by a note bearing date August 9, 1923, and the appellant Dersch was surety on the note and when it became due he paid it. In the

year 1923, the appellant Francis and his wife had made a contract with George Vastine to furnish the material and erect a residence for them. They advanced him about $2,500 on the contract, which called for $3,900. He erected the house, but did not complete it, and he did not pay for the material which was used in the house. At the time he left, the amount which Francis and his wife had advanced to him was greater than the value of the work which he had performed, and he thereby became their debtor. The debts of the appellants were created prior to the time that George Vastine conveyed his interest in the property to his wife.

In 1925 Dersch instituted an action against George Vastine and the appellee, Fannie Vastine, alleging that George Vastine was indebted to him in the sum of $500 because of the note which he had been compelled to pay for him. He attacked the deed executed by George Vastine to his wife on the ground that it was a voluntary conveyance, made for the purpose of delaying, hindering, and defrauding his creditors. Some time later Francis and his wife instituted a suit against George Vastine similar to that filed by Dersch. The Dersch suit appears to have been attempted under the provisions of section 1907, Ky. Stats., while the Francis suit appears to have been brought under the provisions of section 1906, Ky. Stats.

George Vastine was proceeded against as a nonresident, and he did not appear and make defense; but the appellee, Fannie Vastine, filed her answer, denying that the property was conveyed to her for the purpose of defrauding the appellants, or for the purpose of defeating their claims. She alleged that the true consideration for the conveyance was not expressed in the deed, and that the real consideration was the satisfaction of her claim against him for alimony and maintenance, and that he sought to satisfy that claim by the execution of the deed to her conveying his interest in the property. The interest of George Vastine was of small value. He and his wife owned the property jointly, with the right of survivorship as expressed in the deed. There was a mortgage against the property for about $1,500 at the time of the conveyance.

It is argued by counsel for appellee that George Vastine had no interest in the property which could be subjected to the debts of appellants. Unless he owned an interest in the property which could be subjected to the

debts, the appellants have no standing in court, as they were not prejudiced by reason of the conveyance. The right of survivorship was abolished in this state in 1796 by statute. That statute is now section 2348, Ky. Stats. But that statute is modified by section 2143, Ky. Stats., which provides, in effect, that if real estate be conveyed or devised to husband and wife, unless a right of survivorship is expressly provided for, there will be no mutual right to the entirety by survivorship between them. Where the right of survivorship exists by deed as in this case, it is governed by the principles announced by this court in construing the common law governing in such cases. Elliott v. Nichols, 4 Bush (67 Ky. 502).

In the case of Ross v. Garrison, 1 Dana (31 Ky.) 37, this court held that in such cases a husband could not alienate or forfeit the estate, as the whole of it belonged to the wife, as well as to himself, and that upon his death prior to her death the whole estate became hers absolutely. In the case of Elliott v. Nichols, supra, it was held that, if the husband alienate, or if he suffer a recovery, or if he be attainted, none of these will affect the right of the wife, if she survives him.

George Vastine could not do anything of himself, or have anything done to him, which would interfere with the right of his wife to use and enjoy the property as long as he lived, and in the event of his death prior to that of his wife the property was bound to pass to the wife absolutely by right of survivorship. He had no immediate interest in the property which could be subjected to the payment of his debts, and the only possible interest that could have been subjected by his creditors depended on the contingency of his outliving his wife. The creditors could not disturb the possession, or interest, of Fannie Vastine while her husband lived. We mention these things only to show the smallness of the interest of George Vastine in the property which might have been subjected to his debts. His interest was contingent, and subject to a mortgage of about $1,500 against the property, which originally cost only $2,250. These things bear upon the question of the alleged fraudulent intent on his part at the time he conveyed the property to his wife. Waiving aside all of the questions that are raised, save whether there was a fraudulent intent on his part at the time he conveyed the property, and the still more vital question of whether the wife had knowledge of such

fraudulent intent, we will proceed to a consideration of these particular questions.

It has been held in many cases that creditors, attacking a conveyance on the ground that it was fraudulent, must show a fraudulent intent on the part of the debtor at the time he conveyed his property. Perry v. H. Kirsh & Co., 157 Ky. 109, 162 S. W. 555; Cogar v. National Bank of Lancaster, 151 Ky. 470, 152 S. W. 278; Guthrie v. Hill, 138 Ky. 181, 127 S. W. 767. This court has held that, where there is confidential relationship existing between the parties to the conveyance, and evidence is introduced by the creditors which tends to show that the conveyance was voluntary, and made after the creation of the debt to which it is sought to subject the property, an inference of fraud is raised, and the burden is cast upon the grantee to show that there was no fraud in the conveyance. Stewart v. Wheeler, 220 Ky. 687, 295 S. W. 991; Roberts, Johnson & Rand et al. v. Baker, 224 Ky. 414, 6 S. W. (2d) 474; Com. v. Filiatreau, 161 Ky. 434, 170 S. W. 1182; Farmers' Bank & Trust Co. v. Peters, 226 Ky. 403, 11 S. W. (2d) 103.

When appellants introduced the deed, showing that the consideration was love and affection, and also introduced proof showing that George Vastine had left the state indebted to them, and that he had conveyed away his property, or such interest as he had, the evidence was sufficient to shift the burden of proof to the appellee. It was held in the last-cited case, however, that the existence of badges of fraud does not conclusively establish plaintiff's right to have the conveyance which is attacked annulled, but only serves to shift the burden of proof from the plaintiff to the defendant. There was slight proof to show that appellee knew of the debts of her husband when he left the state.

Does the testimony measured by the facts and circumstances in this case establish either that there was no fraudulent intent on the part of the husband, or that she had no knowledge of such fraudulent intent? What are the circumstances? George Vastine had only a small interest in the property, wholly contingent, which might have been subjected to the debts. There is nothing to show that he left the state on account of his debts. It was as reasonable to infer that he left the state on account of domestic troubles. The creditors took no steps towards subjecting this property to their debts for almost two years after he had left the state. The appel-

lee had instituted a suit for divorce without asking for alimony, but she alleged in her petition that she was not waiving her right to alimony. Thereafter, according to her testimony, she and her husband reached an agreement whereby he conveyed to her his interest in the property. According to her testimony, which is undisputed, it was not a voluntary conveyance. There is not a circumstance to indicate that she thought her husband was conveying the property to her to defeat his payment of his debts. There is nothing to indicate that he had any such idea in his mind. He had left the property, and it had been exposed to the rights of the creditors for almost a year before he conveyed it to his wife. The acts and conduct of both the wife and her husband are persuasive, if not conclusive, that the debts of the husband were given no consideration and probably not thought of at the time he executed the conveyance. He did not execute it until the wife was threatening to have him arrested for his delinquency towards their infant daughter. Debtors who attempt to defraud their creditors do not usually give the creditors every opportunity to subject their property before fraudulently conveying it, if it is their intention to perpetrate such a fraud. We are forced to the conclusion that the chancellor did not ignore the weight of the evidence, when he held that the conveyance was not fraudulent as to these creditors. If it is not, they have no complaint, and that is the end of the whole matter.

Judgment affirmed.