## First National Bank of Jackson v. Short et al.

(Decided April 29, 1930.)

W. L. KASH for appellant.

HENRY L. SPENCER for appellees.

Opinion of the Court by Commissioner Stanley— Reversing.

The appellants have sought in this case to trace funds belonging to their debtor, the appellee Ance Short, into certain property deeded to his daughter, the appellee Effie Barrett. On October 2, 1923, Short sold his property on Pan Bowl creek, in Breathitt county, to Williams for $500 cash, and notes for $200 and $800. These notes were discounted to the First National Bank of Jackson. Williams paid the $200 note, but to collect the $800 note the bank filed suit and asserted its lien. The proceeds of the sale lacked $265 of satisfying this debt, which sum remained unpaid by Williams and by Short as indorser. On January 9, 1926, an amended petition filed in the suit set up this deficit and alleged that the money which Short had obtained from the bank had been invested by him in a tract of 40 acres known as the Chadwick farm, on Cane creek, but that the deed thereto had been taken in the name of his daughter, Effie Barrett, with the fraudulent intent and purpose of cheating, hindering, and delaying the bank in the recovery of its demand. An attachment was levied on the land. The essential allegations of the petition were denied, and it was pleaded that the daughter had purchased the property with her own money and that Ance Short had no interest in it.

The chancellor adjudged the daughter to be the owner of the property, and dismissed the proceeding.

The evidence introduced to sustain the allegations of fraud may be thus summarized: The president of the bank testified that Short told him on different occasions about his transactions in land, recited below, as if they were his own, and gave no intimation that his wife or daughter had any connection with them. A warrant had been issued against Short for failure to work the roads, and it was testified, without objection, that he sent word to this witness that he was moving to Cane creek "to beat the road working." The witness went to see him and was

told by Short that he was going to put the land in his wife's name, and was never going to pay the balance due on the note. On other occasions he had said he did not intend to pay it, and, upon being told that any land he might buy with that money would be subject to the note, he said there were different ways, and that he could put it in his wife's name.

James Little, son of Jack Little, who owned the Chadwick farm, testified that Short asked him to write to his father, who was then in Ohio, to come down, as he wanted to buy his farm. He said nothing about wanting to buy it for his daughter. Jack Little testified that he dealt with Short and sold him the farm for $700; that Effie Barrett never talked to him and had nothing to do with the deal, except that the deed was made to her and she gave him her check for the purchase price. The deed was made to the daughter at the direction of her father.

In defense, Ance Short testified that he did the trading for his daughter; that he did not "own a brownie (penny) in it," but he lived on it. His response to the question as to what rent he paid was this: "I pay 'em about. I cleared out two acres and get what I make on that free and give them $25 for the rest of it." But he has never paid the $25. After selling the Pan Bowl property to Williams, he purchased from Gabbard for $1,350 his farm and stock. He sold that place for $1,000, and did not have any more land; but his wife, soon thereafter bought a farm on Puncheon Camp creek for $900. He says he gave her $400 of the money he had received from the sale of his property, and that she had the rest of it from proceeds of a place on War creek, which she owned when they were married, since which time he had been trading with her money. He sold this farm for his wife for $1,000. With a part of the money he paid his debts, and lived on the balance. He cashed the check given his wife and took the money, giving her "a little of it." The dates of these transactions do not appear, but it does appear that right after selling the wife's property Ance moved to this place, which had just been deeded to his daughter. He stated, when testifying, that he had some of the money in his pocket, but "not enough to buy a farm or a mule either." While denying the conversations with the bank president about not paying the balance due it, as above stated, at the same time Short stated in his deposition that he did not owe the bank anything.

Effie Barrett testified that not long before she received the deed in question she deposited $800 in currency in the bank, which money she and her husband had saved during a period of five years, and had kept about the house in different places. This was her first banking experience. Four years before this she and her husband had bought a lot in or near Jackson and built a small house on it, in which they were living. When the deed to the property involved in this case was made, she signed checks for $650, which had been written by her attorney, and agreed to pay the balance of $50 when a certain defect in title had been cured. It was shown by Short's brother-in-law that Effie's husband, Malcolm Barrett, and he for several years had dug and sold coal together and had averaged $3 or $4 a day, and that he (the witness) had saved some money. Malcolm, at the time of the trial was driving a truck for $2.50 a day.

The fact of relationship of the parties and resulting loss to the creditor is not regarded as sufficient proof of a fraudulent purpose. Winfrey's Trustee v. Winfrey, 150 Ky. 138, 150 S. W. 42. Yet those elements are regarded as substantial evidence of probative value. It has often been written that transactions of this character between members of the family will be closely scrutinized in order to discover whether or not they were had in good faith, and will be looked upon with suspicion when there exists the burden of debt. Sim v. Citizens' Bank of Carrsville, 173 Ky. 799, 191 S. W. 489. No better statement of the attitude to be taken in considering evidence such as that presented in this record can be made than that found in Commonwealth v. Filiatreau, 161 Ky. 434, 170 S. W. 1182, 1183, and often quoted, namely:

"While fraud is not to be presumed, it is not required of him who charges it that he should enter into the secret councils of the perpetrators thereof and wrest therefrom the direct evidence of their wrongdoing. Fraud may be inferred; circumstances may be shown of such character as to create inferences making peremptory demand for explanation."

While direct and positive evidence of fraud is meager, the court concludes that that rather elusive and difficult thing to prove is made apparent from the circumstances. The story of the daughter's acquisition of wealth and unusual procedure is not very persuasive proof. Neither is the claimed fact that Ance, who had

**134**

been buying and selling property in his own name, should, about the time it was discovered that there was a balance due the bank, determine to buy a place for his wife. When that was sold, the proceeds were quickly consumed and his daughter just as suddenly acquires almost the same sum of money, and, under the guiding hand of her father, invests all her wealth in a home for him, for which he has paid no rent.

It is provided in sections 2353 and 2354 of the Statutes that when a deed is made to one and the consideration paid by another no use or trust results as between the parties, but if the transaction is but an arrangement to place the property beyond the reach of legal process, and it is, in fact, held in secret trust for the party paying the consideration, the deed shall be considered fraudulent as against his existing debts. Adams' Ex'x v. O'Rear, 80 Ky. 129; Matthews v. Albritton, 83 Ky. 32. And though, as in this case, there may be no direct or positive proof of such secret trust, the provision applies for the reason, as stated in Deposit Bank v. Rose, 113 Ky. 946, 69 S. W. 967, 968, 24 Ky. Law Rep. 732, that such arrangements are difficult of proof, and it is a fraud on the creditor to place one's property in the hands of others, leaving his obligations unpaid; and further:

> "As to existing debts, the statute, by declaring such deeds fraudulent, dispenses with proof, and establishes a conclusive presumption that the property conveyed to another is held in trust for the party paying the consideration. Its purpose is to prevent such a shift or device shielding the property from his existing debts. In other words, as to these debts it regards the party paying the consideration as the beneficial owner of the property, and treats the property as though conveyed to him."

In Garrison v. W. T. Sistrunk & Co., 213 Ky. 138, 280 S. W. 928, 929, the facts are very similar to those presented by this record. These comments are made on the applicability of section 2353:

> "But there can be no valid contention made that, if one pays for property and has the title taken to another for the actually fraudulent purpose of evading his existing or future obligations, his creditors may not in equity subject the property so held by

another for him. It is quite immaterial whether there was an enforceable trust in existence as between the father and son; the question was whether it was in truth and in fact the father's property paid for by him and subject to his debts. It would be a just reflection upon the law and its administration to say that one might be the equitable owner of unlimited property held by another for him, and yet, because there was no enforceable equity as between the real owner and the holder, that the former's creditors could not in equity subject it. The facts of the instant case furnish an apt illustration. The father and son go into a fraudulent scheme by which the former's property is conveyed to the latter for the purpose of evading the payments of the former's debts. Apart from the statute, this is a fraudulent scheme to which they are both parties, and which, therefore, equity will not enforce for either; but is that any reason why the creditors of the real owner may not subject the property to his debts?"

The provisions of sections 1906 and 1907 are also applicable when the consideration has been paid by a debtor and the conveyance of property made to another for a fraudulent purpose, as has been held in some of the foregoing cases, and in O'Kane v. Vinnedge, 108 Ky. 34, 55 S. W. 711, 21 Ky. Law Rep. 1551; in Childers v. Bales (Ky.) 124 S. W. 295; Elmore v. Overstreet, 219 Ky. 813, 294 S. W. 475; Hamilton v. Preston, 166 Ky. 61, 178 S. W. 1146, and other cases.

The court is of the opinion that the chancellor erred in not sustaining the prayer of the amended petition.

The judgment is reversed, with directions to enter a decree conforming to this opinion.