DEUPREE v. HALL et al.

No. 364.

United States District Court
E. D. Kentucky, Covington Division.
Oct. 26, 1953.

Nichols, Wood, Marx & Ginter, Cincinnati, Ohio, for libelant.

Thomas F. Schnorr, Newport, Ky., for respondent Mitchell A. Hall.

Harry K. Aurandt, Covington, Ky., for respondent Louisa M. Hall.

SWINFORD, District Judge.

The question before the court is: Was the stock transfer from Mitchell A. Hall to his mother, Louisa M. Hall, without valuable consideration and with intent to hinder, delay and defraud collection of the libelant's debt?

The libelant's intestate, Katherine Wing, met her death on June 19, 1948, in Campbell County, Kentucky. As it later developed the incident gave rise to unliquidated damages for wrongful death. The libel was filed on December 7, 1948. The libelant, the alleged administrator, qualified in the County Court of Kenton County, Kentucky, rather than in the County Court of Campbell County, Kentucky. The libelant later qualified as administrator in the proper court and amended the libel on July 29, 1949, setting forth that the qualification in the proper court had been had and that letters of administration had been issued in the County Court of Campbell County, Kentucky, on the 28th day of July, 1949.

This court held that the case was barred by limitation. The ruling was appealed and the lower court was reversed by the Court of Appeals for the Sixth Circuit, Deupree v. Levinson, 186

F.2d 297. The case came on for trial on November 29, 1951. On January 16, 1952, the court entered a judgment in favor of the libelant in the sum of thirty thousand dollars jointly and severally against each of the respondents. The transfer of stock from the respondent, Mitchell A. Hall, to his mother, Louisa M. Hall, was on November 7, 1951.

I state these facts in order to show that from the time the cause of action arose until the time the stock was transferred was a period of three years, four months, and eighteen days. The libelant does not seek to set this transfer aside as a preference of creditors, since such an action would have to be brought within the statutory period of limitation. He relies upon KRS 378.010 which provides for nullification of fraudulent conveyances and encumbrances. In order for the libelant to sustain his position it must appear from the evidence that the transfer was without consideration and made solely for the purpose of defrauding this creditor.

The whole question is one of evidence. There can be no dispute as to the law or as to the interpretation by the Kentucky courts of the statute on which the proceeding is based. Since these parties are mother and son it is the law that the burden rests upon Louisa M. Hall to show that the transfer was for a valuable consideration and that the respondent, Mitchell A. Hall, was actually indebted to his mother on a claim which she had a legal right to enforce. The law in the case is set forth in the following quotation:

"It has been held in many cases that creditors, attacking a conveyance on the ground that it was fraudulent, must show a fraudulent intent on the part of the debtor at the time he conveyed his property. Perry v. H. Krish & Co., 157 Ky. 109, 162 S.W. 555; Cogar v. National Bank of Lancaster, 151 Ky. 470, 152 S. W. 278; Guthrie v. Hill, 138 Ky. 181, 127 S.W. 767. This court has held that, where there is confidential relationship existing between the parties to the conveyance, and evidence is introduced by the creditors which tends to show that the conveyance was voluntary, and made after the creation of the debt to which it is sought to subject the property, an inference of fraud is raised, and the burden is cast upon the grantee to show that there was no fraud in the conveyance. Stewart v. Wheeler, 220 Ky. 687, 295 S.W. 991; Roberts, Johnson & Rand et al. v. Baker, 224 Ky. 414, 6 S.W.2d 474; Com. v. Filiatreau, 161 Ky. 434, 170 S.W. 1182; Farmers' Bank & Trust Co. v. Peters, 226 Ky. 403, 11 S.W.2d 103." Francis v. Vastine, 229 Ky. 431, 17 S.W. 2d 419, 420.

Notwithstanding the fact that the burden is upon Louisa M. Hall, in order for the court to find fraud it must appear from clear and convincing proof in the record and the court's mind must be left free from doubt that there was such fraud.

The record, in my opinion, does not disclose evidence of such a positive nature that the court can say that this was a fraudulent transfer. In the first place, the stock which Mitchell A. Hall transferred to his mother was stock which she had purchased and had transferred to him with an idea, in my judgment, of attracting her son to a greater interest in an established family corporation. The son was to pay for the stock, which he never did. It is shown from the record that the mother on numerous occasions put up substantial sums of money for Mitchell A. Hall, much of which was for his living expenses and for some of his spendthrift tastes.

The record does not disclose a case in which an independently wealthy and indulgent parent lavishes gifts upon her child. While it is true that Mrs. Hall was evidently too indulgent in making these payments and loans to her son and for his benefit, it is shown that she had contributed to the well-being of the company through her own labor and had protected the interests of her husband and family by her devotion to the business. Her husband is an invalid and she has by reason of that fact had additional

financial burdens and the income which she derives from her stock ownership and personal work in the company is relatively small. I mention these facts to emphasize the lack of likelihood that a mother, even though devoted and inclined to spoil her child, would give away a fair sized estate or transfer over eight thousand dollars worth of stock in the company on any basis other than to expect payment.

From the whole evidence in the case and reasonable inferences which may be drawn from it, I feel that it would be essentially unfair and unjust to take this property from Louisa M. Hall and declare her a party to a fraud because she took back stock which she had paid for out of her earnings as a secretary. Regrettable though it is that Katherine Wing lost her life because of the negligence, as the court has found, of Mitchell A. Hall and unfortunate as it may be that the administrator cannot find assets to satisfy a judgment for that wrongful act, I do not feel that Louisa M. Hall, who had no part whatsoever—not even to the extent of Katherine Wing herself—in the incident which resulted in the judgment, should be required to pay with stock which she admittedly had purchased from her earnings.

The proctors for the libelant in briefs have referred to a number of Kentucky cases. I have examined all of these cases but feel that they do not do more than state the general rule which I have set out in this memorandum. Each of these cases can be distinguished on the facts from the case at bar.

In Lewis v. Barber, 243 Ky. 519, 49 S.W.2d 328, as action for damages was filed on May 14, 1930, and on the following day, May 15, 1930, the defendant in the first action conveyed and transferred all of his real estate and personal property to his father. Attention is again called to the fact that no transfer was made in the instant case for approximately three years after suit was filed.

In First National Bank of Jackson v. Short, 234 Ky. 130, 27 S.W.2d 668, 669, the court stated:

"The fact of relationship of the parties and resulting loss to the creditor is not regarded as sufficient proof of a fraudulent purpose. Winfrey's Trustee v. Winfrey, 150 Ky. 138, 150 S.W. 42."

It decided that the conveyance should be set aside based primarily upon a substantial record of evidence that the grantor had made repeated statements to the effect that he did not propose to pay the debt and, being told that any land he might buy with the money would be subject to the debt, had stated that he could put the property in his wife's name.

In Hager v. Coleman, 307 Ky. 74, 208 S.W.2d 518, the grantor transferred his bank account to his wife just two days after he had committed the assault out of which the action for damages grew.

In McDonough v. McGowan, 165 Ky. 425, 177 S.W. 277, the facts were these: in February, 1912, McDonough shot and wounded McGowan; on April 8 of the same year McGowan instituted an action for damages against McDonough. While the action was pending, on November 6, 1912, McDonough's mother died leaving property to McDonough and seven other children. Nine days after the death of his mother McDonough conveyed all his interest in the estate, which was all the property he had, to his sister. When this transfer was attacked it was contended by McDonough and his sister that it was in repayment of a loan which she had made to him previously. The court found that there was no evidence on which to base a fact that such a loan had ever been made and avoided the transfer.

In Anglin v. Conley, 114 Ky. 741, 71 S.W. 926, cited by the libelant, the court sustained a transfer between two brothers in which one of them had paid out money to assist the other in a difficulty involving an assault and which resulted in an action for damages. This case was cited in support of the law that an unliquidated tort claim is such a claim on which a creditor may assert when property has been fraudulently conveyed to avoid payment of a claim.

Proctors further assert that the case of Lillard v. M'Gee, 7 Ky. 165, 4 Bibb 165, is

authority in support of their position here. With this I cannot agree. In addition to the case being very old (decided in 1815), it is recited in the facts contained in the opinion that the grantor of real estate to his father-in-law had expressly stated that he would make such a conveyance of his property in order to defeat a recovery in the tort action against him.

Allen v. Ligon, 175 Ky. 767, 194 S.W. 1050, was a case in which a defendant in a damage suit deeded to his wife a 123 acre farm recited to be in consideration of one thousand dollars, represented by two lien notes of four hundred dollars and six hundred dollars, respectively, and the assumption of a fourteen hundred dollar lien then on the property. The wife admitted that she knew all about the reason for her husband making the deed to her. Both she and her husband refused to answer legitimate questions touching upon the question of the consideration. She admitted that she knew of her husband's business troubles; that she had no means with which to make a purchase and that the management of the farm had not been changed since the sale.

In the instant case Louisa M. Hall testified that she knew there had been a lawsuit against her son, Mitchell A. Hall, but that she thought it had been disposed of by a dismissal by the court. She testified that she did not know there was any pending action at the time of the transfer. It is disclosed by the record that the trial court had dismissed the case by sustaining a demurrer to the amended libel, but that the judgment of the lower court had been reversed.

The whole question must rest upon what impression the evidence makes upon the mind of the chancellor. The case at bar has one distinguishing feature from all the cases I have examined which seems to me to be most significant. In this case the property transferred was actually the property of the transferee. She had paid for it and had it transferred to her son on condition that he would refund her the money that it had cost her. While it cannot be considered as a conditional sale it is a strong circumstance.

In the light of the whole case I am of the opinion that the transfer was not fraudulent and that Louisa M. Hall should not be required to account to the libelant for the stock. An order to that effect is this day entered.