Peggy Ann Schaefer SPOTTS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. CIV.A. 5:03–529–JMH.

United States District Court,
E.D. Kentucky,
at Lexington.

July 23, 2004.

Peggy Ann Schaeffer Spotts, Nicholasville, KY, Pro Se.

Stuart M. Fischbein, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on opposing summary judgment motions [Plaintiff's Motion for Summary Judgment, Record No. 11 and Defendant's Motion for Summary Judgment, Record No. 13]. Both parties have responded to the other's motion [Defendant's Response, Record No. 15 and Plaintiff's Response, Record No. 16]. The Court notes that the time for reply has expired. Having been sufficiently advised, the Court deems this matter ripe for decision.

## STATEMENT OF FACTS

The case *sub judice* is a quiet title action filed in the Jessamine County Circuit Court brought under 28 U.S.C. § 2410, seeking the removal of the nominee tax lien filed by the Internal Revenue Service against the real estate located at 1000 Delaney Woods Road, Nicholasville, Kentucky 40356. The United States removed the action to this Court pursuant to 28 U.S.C. § 1444.

The facts are as follows. Charles Matich operated an asset protection program designed to reduce a person's tax liability and hide assets from the Internal Revenue Service ("IRS") and other creditors

through the use of offshore bank accounts. Matich would set up a Nevada limited liability company to receive a portion of a client's income. The limited liability company would send the funds by wire to an account in the Barclay Bank, in Grand Turk, Turks and Caicos, British West Indies. The account was in the name of Orion Holding Company, another company controlled by Matich. A debit card account was set up for each client at the TSB Bank in the Isle of Jersey. When a client needed money, he would notify an employee of Matich if Grand Turk and she would wire the needed funds to the debit card account. The client would then make purchases with his offshore funds by using the debit card. Both Grand Turk and Isle of Jersey have stringent bank secrecy laws and the records of bank accounts in these places can not be reached by legal process.

In 1990, Matich traveled to Columbus, Ohio and explained the asset protection program to Defendant Peggy Spotts and her ex-husband Ray Spotts. In the summer of 1994, Ray and Peggy Spotts traveled to California and discussed the asset protection program with a member of an accounting firm who allegedly confirmed Matich's legitimacy. Peggy and Ray Spotts became clients of Matich and his offshore protection program in 1994. Ray Spotts would have commissions and other taxable income due him sent to Proven Triumphs, LLC, the Nevada LLC set up for Spotts by Matich as a part of the asset protection program. These funds were then sent to Orion Holding Company's account at Barclay Bank. Ray Spotts gained

access to the money through a debit card account at the TSB Bank.

In the summer of 1996, the Spotts purchased a home located at 1000 Delaney Woods Road, Nicholasville, Kentucky. Ray Spotts wire transferred approximately $180,000.00 of the funds from Proven Triumphs to the account at Barclay Bank in Grand Turks. This $180,000, along with $20,000.00 on loan from Orion Holding Company, were forwarded to the settlement officer at the time of settlement on the purchase of the home. To disguise the fact that the Spott's were using their own money to purchase the home, and as protection against creditors, Ray and Peggy Spotts executed a note to Orion Bank and Trust, another Grand Turk company controlled by Matich, for $200,000.00. This note was secured by a mortgage on the home. Orion Bank and Trust then forwarded the $200,000 to the settlement officer in the guise of loan proceeds. The home was purchased for $272,500.00, with the balance of the purchase price coming from Peggy.[1] Although the note and mortgage with Orion Bank and Trust were in the names of both Ray and Peggy Spotts, the deed was placed solely in Peggy Spotts' name to, among other things, protect it from business creditors.

Subsequently, Matich was advised that Peggy Spotts was concerned that the home was subject to a mortgage. After a phone conference with Ray and Peggy Spotts in October 1996, Matich arranged an assignment of the note and mortgage to Peggy Spotts later that same month. This assignment was not recorded when the

---

**1.** Peggy Spotts claims she furnished $80,000.00 from her non-marital funds from the sale of her Huron, Ohio home to pay towards the purchase of the Delaney Woods home at issue. The settlement sheet for the sale of the Delaney Woods home, however, shows only $74,382.87 being paid by the purchaser in addition to the $200,000 loan

amount—a $5,000 deposit and $69,382.87 cash paid at closing. Further, the settlement sheet for the sale of the Huron, Ohio home shows that the buyer was to pay the seller $75,0501 cash at closing. This was satisfied in the form of a check for that amount made out to Peggy Ann Spotts and Lewis R. Spotts.

Spotts' applied for a home equity loan from Central Bank in Lexington, Kentucky. Presumably to help secure the home equity loan, Matich had the Orion Bank and Trust Company verify the "sham" mortgage loan in a letter dated November 22, 1996, as if it was valid and still held by Orion.

In September, 1998, Peggy Spotts filed for a divorce. Ray Spotts divorce attorney advised him to consult a tax attorney concerning his 1994, 1995, 1996, and 1997, income tax returns due to his failure to report as taxable income the funds he sent offshore. The tax attorney he contacted, Robert Webb, advised him to file amended returns for those years in order to report as income the funds he sent offshore. Thus, Ray Spotts filed amended returns for 1994, 1995, 1996, and 1997, resulting in additional tax liability. Ray Spotts paid the additional liabilities reported on the amended returns for 1994 and 1995 when he filed the amended returns. The two reported liabilities for 1996 and 1997— $174,367.00 and $201,231.00 respectively— were assessed on November 8, 1999.

On or about November 1, 2002, the Internal Revenue Service filed a notice of federal tax lien in the Jessamine County Court. The federal tax lien named Peggy Spotts as the nominee/alter ego of Ray Spotts and was issued due to Ray Spott's unpaid income tax liabilities for 1996 and 1997. The notice states that it is a specific notice of federal tax lien covering the real property and improvements at 1000 Delaney Woods Road, Nicholasville, Kentucky.

On November 7, 2003, Peggy Spotts filed the current quiet title action arguing that the real property at issue is the sole and individual property of Plaintiff, and that the outstanding debt the IRS seeks to collect is her ex-husband's.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–252, 106 S.Ct. 2505). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party, however, "cannot rest on [his] pleadings," alone and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997). In considering a motion for summary judgment the Court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

This is a quiet title action seeking the removal of a nominee tax lien. The United States, being owed $375,598 in back taxes by Ray Spotts, filed a nominee tax lien against the real estate located at 1000 Delaney Woods. The United States claims

it is entitled to this lien because Peggy Spotts is an alter ego or nominee of Ray Spotts.

A federal tax lien arises when unpaid taxes are assessed and continues until the resulting liability is either satisfied or becomes unenforceable due to the running of the statute of limitations. *See* 26 U.S.C. §§ 6321 and 6322. The lien attaches to all property and property rights that the taxpayer then holds or subsequently acquires. *Id.* Once a tax lien attaches to property, it remains with property despite subsequent transfers unless property is sold to bona fide purchaser for value before notice of a lien is filed. *Id.*

A tax lien does not attach to property that a taxpayer has previously transferred and that no longer belongs to him. If the property is placed in the name of another as the taxpayer's alter ego or nominee, however, the IRS can properly regard the property as belonging to the taxpayer and attach a lien to the taxpayer's beneficial interest in the property. *See Lemaster v. United States*, 891 F.2d 115, 119 (6th Cir.1989).

Similarly, when a taxpayer has fraudulently conveyed property prior to the establishment of a federal tax lien, the United States is entitled to rely upon applicable fraudulent conveyance laws of the particular state in which the property is located to determine whether the taxpayer has an interest in the property. *United States v. Fernon*, 640 F.2d 609, 611–12 (5th Cir.1981). Thus, Courts may look beyond nominal title to determine whether a taxpayer retains an interest in a property after transfer.

## A. *Nominee or Alter Ego*

In the case of a nominee lien, the IRS proceeds "against an alter ego or nominee of a delinquent taxpayer for the purposes of satisfying the taxpayer's obligations." *United States v. Letscher*, 83 F.Supp.2d 367, 375 (S.D.N.Y.1999). "A 'nominee' is a person or entity who holds legal title to property that in truth belongs to another who exercise control over and realizes the benefit of it." *Sumpter v. United States*, 302 F.Supp.2d 707, 720 (E.D.Mich.2004). A nominee theory involves the determination of the true beneficial ownership of the property. *Id.* at 721.

When presented with a nominee or alter ego claim, a Court "attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another [person or entity] while, in actuality, retaining all or some of the benefits of being the true owner." *In re Richards*, 231 B.R. 571, 578 (E.D.Pa. 1999). Courts utilize the following six factors in determining whether a transferee is a mere nominee:

> (1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Sumpter*, 302 F.Supp.2d at 721 (quoting *Porta–John of America, Inc. v. United States*, 4 F.Supp.2d 688, 701 (E.D.Mich. 1998)).

Plaintiff states that she contributed $80,000 of her personal funds to the purchase of the $272,500 home. The record shows that the remainder of the purchase price came directly from the taxpayer's offshore account in the form of a "sham" offshore mortgage and note. Thus, it is the Court's determination that,

while Plaintiff did contribute some funds to purchase the realty at issue, it was not enough to amount to adequate consideration. Taxpayer stated in his deposition that the reason for placing the home in Plaintiff's name was two-fold: one, to make Plaintiff feel more secure about their marriage, and two, to protect the asset from creditors. The record is unclear as to whether taxpayer anticipated an actual lawsuit or impending tax liability. At the time of the transaction, the alleged nominee and the taxpayer shared one of the closest relationships known to our society—that of husband and wife. While the deed to the property was properly recorded, the assignment of the fictitious note and release of the "sham" mortgage were not. The Court can only assume that this was to avoid having to pay income tax on the debt forgiveness income created by the assignment of the note in 1996. The taxpayer resided at the home with the plaintiff and continued to retain the benefits of the transferred property until their divorce action was filed in 1998. Based on an analysis of the aforementioned factors, it is the Court's determination that the Government has satisfied the necessary elements to determine that Peggy Spotts was the nominal owner of the home, and that the federal tax lien was appropriately attached to the property.

**B. *Fraudulent Conveyance***

KRS § 378.010, Kentucky's statute on fraudulent conveyances and encumbrances, invalidates any gift, conveyance, assignment, or transfer of either real or personal property that is made with an intention to defraud creditors, purchasers, or other persons. The statute goes on to state that the title of a purchaser for valuable consideration shall not be affected by the statute unless it appears that she had notice of the fraudulent intent of the immediate grantor. KRS § 378.010. In this instance, the taxpayer did not actually transfer the property to Plaintiff, however, the fraudulent conveyance statute is also applicable when consideration is paid by the debtor (i.e. taxpayer) and the conveyance of property is made to another for fraudulent purposes. *First National Bank of Jackson v. Short,* 234 Ky. 130, 27 S.W.2d 668, 670 (1930).

The question of fraud involves the element of intent. Since it is impossible to look into one's mind for the purpose of ascertaining his intent, it is necessary to determine intent by considering the circumstances surrounding the transaction. As it is usually very difficult to prove fraud by direct evidence, such proof is not necessary. *Pergrem v. Smith,* 255 S.W.2d 42, 44 (Ky.1953); *Battjes v. United States,* 172 F.2d 1, 5 (6th Cir.1949). "Thus, the issue of fraud is commonly determined by certain recognized indicia, denominated 'badges of fraud,' which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them." *United States v. Leggett,* 292 F.2d 423, 427 (6th Cir.1961) (*citing Pergrem v. Smith, supra*).

Common examples of badges of fraud include inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties. *Leggett,* 292 F.2d at 427. Additional badges of fraud which will generally authorize setting aside a conveyance as fraudulent in absence of countervailing proof are: reservation of benefits by the transferor, control or dominion of property by the debtor, transfer or conveyance between persons who are related or occupy a confidential relationship, transfer which contains false statements and recitals as consideration, and transfer by debtor in anticipation of suit against him or after suit has begun or is pending against him. *Sumpter v. United States,* 302 F.Supp.2d 707, 723 (E.D.Mich.2004); *Russell Co. Feed Mill,*

*Inc. v. Kimbler,* 520 S.W.2d 309, 311–12 (Ky.1975).

 The facts of this case present multiple badges of fraud including: (1) inadequate consideration paid by Plaintiff; (2) the taxpayer continued to enjoy the benefits of the property transferred; (3) the taxpayer had at least partial control and dominion over the transferred property; (4) a close and confidential relationship between the taxpayer and Plaintiff; (5) fictitious notes and mortgages; (6) filing false income tax returns; and (7) use of an intricate offshore scheme to avoid income tax liability. Other common indicia, however, are not present. For instance, the Court finds that the transfer occurred before any tax liability or the prospect of liens arose. Also, the transaction was neither secret nor hurried; it was seemingly conducted in the usual mode of doing business.

 Kentucky law provides that when a conveyance is attacked as fraudulent and badges of fraud are shown, the burden of proving good faith is on the transferee. *Kimbler,* 520 S.W.2d at 311. Plaintiff, proceeding pro se, claims that she had no notice of Ray Spott's fraudulent intent and that she paid valuable consideration for the property. Accordingly, she claims she is protected pursuant to the statute's exception for purchasers who act in good faith and pay a valuable consideration. When interpreting the bona fide purchaser exception to the statute, Courts look for three things: (1) the purchaser's good faith; (2) consideration at the time of purchase; and (3) consideration must be a fair equivalent of the item purchased. Plaintiff continuously states her ignorance about the offshore asset protection program, however, it is clear from the record that she did not pay the fair equivalent of the item purchased. These discrepancies preclude the entry of summary judgment on the basis of fraudulent transfer.

## CONCLUSION

While the Court declines to accept the government's fraudulent conveyance theory, it is the Court's determination that no material question of fact exists as to whether Peggy Spotts was acting as an alter ego or nominee of Ray Spotts. The Court finds that Peggy Spotts's ownership of the property was undoubtedly a "sham" designed to insulate assets from the reach of Ray Spotts's creditors. In such a situation, the Court rules that the government has the right to seize assets held in the name of Peggy Spotts to satisfy the tax obligations of the real owner, Ray Spotts.

Accordingly,

**IT IS ORDERED,**

(1) that Plaintiff's motion for summary judgment [Record No. 11], be and the same hereby is **DENIED;** and

(2) that Defendant's motion for summary judgment [Record No. 13], be and the same hereby is, **GRANTED.**

## JUDGMENT

In accordance with the Order of even date and entered contemporaneously herewith,

**IT IS HEREBY ORDERED:**

(1) That this action be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**

(2) That all pending motions be, and the same hereby are, **DENIED AS MOOT.**

(3) That all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY.**

(4) That this Order is **FINAL AND APPEALABLE** and **THERE IS NO JUST CAUSE FOR DELAY.**